PEOPLE *v.* GROSS.

1. WITNESSES — QUESTION INQUIRED INTO BY DEFENSE MAY BE
FURTHER INQUIRED INTO BY PROSECUTION.

In a prosecution for violation of the prohibition law,
where one of the people's witnesses, on cross-examination,
was questioned in regard to defendant's daughter making
the complaint against him, it was competent for the prose-
cutor to examine said witness further and also to inquire

of the daughter about it when she was subsequently called as a witness.

2. SAME — LENGTHY CROSS-EXAMINATION OF HOSTILE WITNESSES PERMISSIBLE.

Where defendant's wife and daughter, who were active in making the complaint against him and were witnesses the prosecution was required to call if requested, proved to be adverse witnesses to the prosecution, giving reluctant and evasive answers, the trial court was justified in permitting the prosecutor to cross-examine them at length.

3. INTOXICATING LIQUORS—EVIDENCE—SUFFICIENCY — OVERWHELMING WEIGHT OF EVIDENCE.

Defendant's conviction of violating the prohibition law, *held*, not against the overwhelming weight of the evidence.

4. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY.

Where defendant's wife called the sheriff and had defendant arrested for violation of the prohibition law, and the complaint was sworn to by the daughter, but on the trial they both testified to his innocence, and defendant claimed that his wife was mentally unbalanced, that she imagined things, and that she made the daughter sign the complaint, it was competent for the prosecutor to introduce testimony tending to show that defendant's wife was mentally normal and that she did nothing to induce the daughter to make the complaint.

5. SAME—EXCEPTION TO GENERAL RULE EXCLUDING EVIDENCE OF OTHER OFFENSES.

One of the exceptions to the general rule that evidence of crimes other than that charged is incompetent, is where an offense against the prohibition law is charged as a second offense under the statute.

6. SAME.

Another exception to the general rule that evidence of crimes other than that charged is incompetent, is where it is necessary to prove "guilty knowledge and purpose," or when "motive is to be proved from the circumstances."

7. SAME—EVIDENCE—ADMISSIBILITY.

Where defendant voluntarily brought into the case the fact that he had been convicted of driving an automobile

while intoxicated, but claimed the charge was unjust, and, while admitting the possession of hard cider, claimed that he had not used it for beverage purposes for several months previously, it was competent for the prosecution to meet this by testimony showing that at about the time of his arrest he was in fact intoxicated, although said testimony would not have been admissible purely for the purpose of impeachment.

Exceptions before judgment from Shiawassee; Collins (Joseph H.), J.    Submitted January 15, 1925. (Docket No. 132.)    Decided April 24, 1925.

Daniel Gross was convicted of violating the liquor law.    Affirmed.

*George E. Pardee*, for appellant.

*Andrew B. Dougherty*, Attorney General, and *Leon F. Miner*, Prosecuting Attorney, for the people.

STEERE, J.    Defendant is a farmer of middle age, living in the township of Hazelton, Shiawassee county. His family consists of himself, his wife and daughter, Mary, about 16 years of age.    He was arrested, tried and convicted of unlawfully manufacturing, giving away, furnishing, etc., fermented and intoxicating liquor, "to wit: 300 quarts of hard cider," charged as a second offense under the statute.    At conclusion of the testimony defendant moved for a directed verdict which was denied, and after verdict moved for a new trial on various grounds which was also denied.    The case is here on exceptions before sentence.

The record shows that defendant's conduct in the particular charged was·first called to the attention of the officers by his wife, who requested the sheriff to come to their home.    In compliance with her request he went there accompanied by a deputy.    Defendant was not at home when they arrived.    His wife

received and conversed with them, but what if any charges she then made against her husband in his absence was apparently recognized as incompetent. The officers were however permitted to testify that she showed them in a back room next to the kitchen some barrels of cider and stood by while they examined one partly full of what they recognized as hard cider. This barrel was on tap, set slanting, with a faucet tube and rubber hose connected and an uncleaned glass stained and smelling of hard cider near by for ready use. They took some of the contents of the barrel away with them after identifying it by smell and taste as hard cider. Subsequent laboratory tests verified it as fermented liquor with sufficiently high alcoholic content to distinctly classify it as intoxicating. The officers then drove to the village of Lothrop not far away where they had dinner and later in the afternoon went to defendant's place again where they found him at home. The two officers testified that the sheriff first talked with him about his having hard cider there and the use he made of it, asking him during the conversation if he did not think he did wrong in so doing and causing trouble in his family. He answered in substance:

"Not at all.  *  *  *  I don't think there is a bit of harm in drinking it and I tell you right now I am going to take a drink of cider when I want it and if any one comes here and I want to let him have a drink, I will let him have a drink of cider."

He admitted having trouble with his wife and attributed it to her mental condition. His wife was absent when the officers returned and found him there but came in while they were talking and took part in the conversation. The officers were permitted, against objection, to tell what she said upon the subject to her husband in his and their presence. Deputy sheriff McFee testified that she told defendant, in substance:

" 'You brought this trouble on yourself. I have stood it as long as I can, that cider that you are drinking in there is the ruination of our home, and these booze parties that you have, that is the cause of his being in debt, and my not having anything to wear.' * * *

"*Q.* Did he deny those accusations made there by his wife?

"*A.* No, I don't think he answered her at all."

The sheriff's version of it was that she told her husband, in substance:

" 'That cider is the ruination of our home and our family, it is breaking up our home,' and she says, 'I have stood it just as long as I can; these booze parties you have here' * * * There was nothing in the conduct of Mrs. Gross that would indicate that she was mentally insane. She stood there with tears in her eyes when she told this."

The officers took defendant to the county jail that evening. The daughter, Mary, was away from home when the officers were there, but the next morning she and her mother were brought by a neighbor to the sheriff's office in Corunna where they made complaint against him. After they told their story of defendant's misconduct his daughter swore to the complaint before a magistrate. After his arrest defendant was released on bail. Preliminary examination before the magistrate was set for and held at a later date. His wife was not called as a witness against him, but his daughter was sworn and testified. The magistrate found probable cause to believe him guilty of the offense charged and bound him over for trial in the circuit court. At the trial in the circuit court his daughter was called by the prosecution as a witness and examined. His wife was produced as a witness at the request of counsel for defendant and first examined by him, thereafter being cross-examined by the prosecuting attorney.

230—Mich.—42.

The case was closely tried by counsel on the respective sides with rigid cross-examination of opposing witnesses. The claim of the prosecution is indicated in outline by what has been stated. Defendant's claim and testimony is a positive disavowal of any criminal intent, word or act on his part in the particulars charged, and direct denial of all incriminating admissions or acts by him as to which the prosecution introduced testimony. He admitted making cider on that and previous years from apples on his farm, and having it in his possession when the officers visited his place; but stated it was for domestic purposes only, to make apple butter, jelly, etc., or to keep until it became vinegar and suitable for use as such; that they occasionally took a drink of it when sweet but it was not used as a beverage after it fermented; he personally drank little of it even when sweet, "but never cared for cider, sweet cider or other cider." He admitted there had been trouble in the family, which he imputed to the abnormal mental condition of his wife, relating conduct on her part claimed to so indicate, including her strenuous objection to their daughter leaving home to attend high school. Asked whether "it increased and became more aggravated or less, or was stationary" he said in part:

"It was becoming stronger all the time. From that time my wife was displeased with Mary's going to school. For the last year or thereabouts there have been things to indicate on the part of my wife's mind that she was imagining things that had not occurred and which were with reference to my conduct, and which occurred quite often. I didn't keep track of it."

When called during the trial as witnesses, defendant's wife, who admitted she "called the sheriff and had him arrested," and daughter, Mary, who admitted she swore to the complaint against him, both re-

pudiated all previous intimation that defendant had been guilty of any misconduct in the particulars charged, and loyally testified in harmony with his theory of his wife imagining things which had not occurred, and his total abstinence from cider as a beverage after it fermented and ceased to be sweet. His wife declined to admit she was "crazy," but said she was nervous and in poor health, had considerable trouble with her husband at times and when angry at him had done unreasonable things; that they had trouble over Mary going away to school, she was angry at him when she had him arrested and appeared the next day against him at Corunna, and "did it for spite," and inadvertently stated "I don't remember what I accused my husband of that wasn't true." Mary testified she swore to the complaint against her father and told the officers of his having the Chamberlains there drinking with him because her mother told her to do so, but did not remember telling them about the booze parties in which their actions made her afraid of her life.     Her mother when on the stand was asked and answered in part:

"Did you or not tell Mary what you wanted her to do after you got to Corunna?
"A. No, sir, I didn't.
"Q. Was there something said about a paper would have to be signed or not?
"A. Yes.
"Q. State whether or not you said anything to Mary about what you wanted her to do after you got down there to the sheriff's office?
"A. No, I didn't."

Deputy sheriff McFee was called as a witness by the prosecution early in the case before either Mary or her mother testified.     His direct testimony was limited to events on the day he accompanied the sheriff to defendant's place in answer to his wife's call and what she there said in her husband's presence.     No

mention was made of Mary in his direct-examination by name or otherwise. On cross-examination he was asked by defendant's counsel and answered in part as follows:

"*Q.* Did Mrs. Gross and Mary come to Corunna the next day?

"*A.* They did.  *  *  *

"*Q.* Well, do you know of your own knowledge how they happened to come down the next day?

"*A.* I don't know, I did not request them to.  *  *  *

"*Q.* Did you hear the sheriff tell anybody to come down the next day?

"*A.* I did not.

"*Q.* Do you know how Mary happened to make complaint against her father?

"*A.* Because she wanted to.  ·

"*Q.* Do you know as a matter of fact that she wanted to?

"*A.* She said she did; that is all the way I have of knowing.  *  *  *

"*Q.* Now just tell us just exactly what it was Mary said.

"*A.* In the whole conversation?

"*Q.* What Mary said there, when she said that she wanted to make a criminal complaint against her father?

"*A.* That her father was leading a life that she could not stand—that on account of his drinking and—

"*Q.* Just a moment. Mary says, 'Father is leading a life she could not stand?' What further did she say?

"*A.* Too many booze parties.

"*Q.* What?

"*A.* Having too many booze parties.

"*Q.* Too many booze parties?

"*A.* And at those booze parties, language used and actions made that she was afraid of her life.

"*Q.* Mary said that?

"*A.* Yes, sir.

"*Q.* Mary said that those booze parties what?

"*A.* Language was used—and they acted so that she was afraid of her life.

"*Q.* Is that all she said or was there more?

"*A.* Oh, there might have been more—she talked about having to quit school or something."

With the subject thus introduced, it was competent for the prosecutor to examine McFee further and also to inquire of Mary about it when she was subsequently called as a witness. Mary and her mother were witnesses the prosecution was required to call if requested. The record fairly shows them adverse witnesses to the prosecution, giving reluctant and evasive answers which justified the court in permitting the prosecutor to cross-examine them at length (*People* v. *Case,* 105 Mich. 92).

We are unable to agree with defendant's contention that the verdict should be set aside because against the overwhelming weight of evidence. The testimony of the officers that they visited plaintiff's home at the request of his wife who received them and with her permission, if not assistance, found a part full barrel of hard cider then on tap which was shown to be intoxicating liquor and that defendant when interviewed later made no denial of ownership and possession, is undisputed. Neither is it denied that his wife then accused him in detail, in his presence and the presence of the officers, of the offense for which he was prosecuted, and he made no denial. His direct defense at the trial was that the cider he kept there was never used by him or given to others for beverage purposes after it fermented and any liquid product from apples he ever sold or let others have was distinctly vinegar which could not be used as a drink. The proofs of the prosecution made a *prima facie* case and the conflicting testimony fairly made the question of his guilt an issue of fact for the jury.

The case was complicated to some extent by the undisputed facts that it was initiated by defendant's wife who appealed to the sheriff and had him arrested

for this offense and his daughter who swore to the complaint, while on the trial both testified to his absolute innocence.   In explanation of that anomalous situation the claim was made for defendant early in the trial that this unfounded prosecution was the result of spite work and the unbalanced condition of his wife's mind, which made her violent when she became angry and given to "imagining things that had not occurred," and his daughter, Mary, subscribed and swore to the complaint because her mother made her do so.   That subject was first brought into the case by the defense in cross-examination of witnesses for the prosecution and figured more or less in the testimony throughout the trial.   It was the theory of the prosecution in meeting this claim, that the charge was well founded and understandingly made by the mother and daughter, and their change of front resulted from defendant's activities in preparing for trial while at large on bail.

To that end the prosecutor introduced testimony tending to show that defendant's wife was mentally normal and what was done and said when complaint was made before the magistrate.   Mary testified her mother made her sign and swear to a paper which was not read over to her, the nature and import of which she did not understand.   It was competent for the prosecution to meet this by the testimony of others present that her mother neither said or did anything on that occasion to induce her to make the complaint, and to also show by the committing magistrate what occurred when they were before him.   He identified the complaint and said in part:

"Before it was signed I talked with Mrs. Gross and Mary Gross.   They told me about their troubles. After they had talked over matters that way I then prepared this paper.   I prepared the paper from what they told me.   After I had prepared it I read it over to Mary Gross.   Mrs. Gross was present.   It was

explained to both of them and explained who it was meant to arrest. * * * After Miss Gross signed this paper she was sworn to it, raised her right hand and swore that was true that she had signed. * * *

"*Q.* Did you hear them say anything about the fact of whether they were afraid of Dan Gross or not?

"*A.* Yes, they were afraid to go back until the sheriff had went out and got him."

While much of the testimony introduced along that line by the prosecution would be incompetent if independently offered as a part of the people's case, objection to it was not tenable when introduced to meet defendant's claim and testimony that his prosecution resulted from his wife's mental incompetency and intimidation of his daughter.

Error is strenuously urged against the court's permitting proof by the prosecution of defendant's committing other similar offenses, and cases are cited to the well-settled general rule that evidence of crimes other than that charged is incompetent. To this general rule there are several distinct exceptions, one of which at least arises here from the fact that this is charged as a second offense under the statute.

The date and court of defendant's conviction of a previous violation of the prohibition law, as to which this is charged as a second offense under the statute, was alleged in the information. The record of such conviction with identifying evidence was admitted against objection, the court then saying in effect it was not substantive proof of the offense for which defendant was on trial and the jury would be so instructed in the charge. This the court did, explaining to the jury why and for what limited purpose the evidence was admitted, charging in part as follows:

"You are not to consider this evidence of a former conviction as any evidence at all of the guilt of the respondent in this case; nor should you consider that because of this former conviction he was more liable

to commit this offense, or because of the first conviction he is probably guilty of this offense also. The only purpose, as I have said, that it has in this case is to show the fact of a former conviction by (of) respondent, and you are not to consider it as affirmative proof of the guilt of respondent in this case."

In proving former conviction the prosecution simply showed by the record that on the date alleged respondent was duly arraigned at the bar in open court and "on information on file against him for violation of the liquor law having been read to him by the prosecuting attorney, pleads thereto guilty," etc. The only evidence of another crime or misdemeanor committed by him related to his driving an automobile while intoxicated. It first came up while defendant's counsel was cross-examining the sheriff, who, in reply to an inquiry as to when, before January 24th, he had seen and talked with Mrs. Gross on the subject, said it was while "Mr. Gross was in jail, driving a car drunk when she was there." This answer was at once stricken out on defendant's motion, as not responsive, but during his cross-examination by the prosecutor defendant volunteered the information that he had been convicted before a justice of the peace, after trial, of driving an automobile while intoxicated and sentenced to 20 days in jail. He then was asked, and admitted, that in the fore part of January, 1924, he drove around past a Mr. Conklin's place with his car going a little from one side of the road to the other, but denied being then intoxicated and ascribed his deviating course to irregular ruts in the snow. The prosecution later called Mrs. Conklin who was permitted against objection to testify to defendant's appearance and erratic driving on that occasion, and to also state the snow was not deep and he was not following the path of other autos but "coming down the road zig-zag." She did not testify he was intoxicated nor offer any suggestion

to that effect beyond telling of his appearance and manner of driving. On cross-examination she said: "All I know, I saw him driving along there and I think he zig-zagged along going up the road considerable."

It is contended by defendant's counsel that Mrs. Conklin's testimony was both an attempt to prove the commission of another offense than the one charged and to impeach the witness on collateral matter drawn out in cross-examination. Admitting such would be its tendency in the first instance, the people's counsel denies that it was directed to a purely collateral subject and urges it was competent to meet the material testimony of defendant and his wife that he had not indulged in hard cider or intoxicants of any kind for several months previous to his arrest in the instant case; that a question of intent was involved as his guilt was not shown by mere proof of possession of hard cider, and it was necessary to show directly or by convincing inference that defendant's possession and use was for an unlawful purpose other than making vinegar of it.

Amongst the exceptions to the general rule excluding evidence of other offenses Underhill on Criminal Evidence (3d Ed.), § 151, includes, to prove "guilty knowledge and purpose," or when "motive is to be proved from the circumstances," and in section 154 states as a general proposition:

"All evidence is relevant which throws, or tends to throw, any light upon the guilt or the innocence of the prisoner. And relevant evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time the accused has been guilty of some other separate, independent and dissimilar crime."

Defendant voluntarily brought into the case the fact of his having been convicted for driving while in-

toxicated.     In proving this charge a second offense
the prosecution only showed a former conviction of
violating the liquor law, without specifying in what
particular.     Whether defendant's testimony as to his
former conviction related to that conviction is not
made clear, though perhaps inferable.     When on the
stand he told of a civil suit brought against him by
a man named Uberroth in which he claimed the sheriff
gave him "a dirty deal" when he served the papers
on him, and said in that connection "the other charge
that they convicted me on was driving when drunk,"
which he claimed was unjust because "I didn't have
an opportunity to have all my witnesses there."     He
also swore, as did his wife, that he had not used
intoxicating liquor of any kind for several months
previous to the date of his arrest.     Admitting that
he made cider and had it in his home, he denied that
he ever drank any of it after it had fermented, or
kept it for any unlawful purpose.     When directly
asked by his counsel if he had it there after it was
fermented "for the purpose of using it as a beverage,"
he replied, "I did not."     To emphasize absence of
intent or purpose he introduced testimony that he
had used no intoxicants at all for months.     To meet
this testimony, directed to his innocence of intent or
purpose, it would seem competent for the prosecution
to show that about the time of or shortly before his
arrest for this offense he did in fact indulge to the
point of intoxication.

Had defendant not himself introduced the subject
of his driving while intoxicated and told of his con-
viction for that offense, unjustly as he claimed, and
emphasized his teetotalism to negative purpose and
intent, the apparent attempt to impeach on a collateral
matter would present a more serious aspect.     The
testimony was not admissible purely for the purpose
of impeachment, but in view of the circumstances

under which it arose, following defendant's voluntary testimony introducing the subject, we do not find it prejudicial error, or tended to a miscarriage of justice.

The jury saw all the witnesses and heard in lengthy detail their conflicting testimony. The court in plain language fully instructed them upon the rights and safeguards to which the law entitled the accused, and to what extent they might consider evidence of other offenses, saying in part:

"Any evidence of any other offenses committed by respondent that was brought out on cross-examination, is not to be considered by you as any proof whatsoever of the guilt of the offense with which he is charged here; nor can you say that because he committed other offenses it is probable he also committed this one. * * *

"I charge you that if you find that the testimony can be reasonably reconciled with any claim or theory in the case other than the guilt of the accused, then your verdict should be not guilty."

We find no prejudicial error demanding reversal, and the conviction will stand affirmed.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.