33031.  CALDWELL *v*. THE STATE.

DECIDED OCTOBER 14, 1950.

*H. G. Vandiviere, Ben F. Smith,* for plaintiff in error.
*James T. Manning, Solicitor-General,* contra.

MACINTYRE, P. J.  The defendant, Paul Caldwell, was charged with the distilling, manufacture, and making of certain liquors prohibited under the prohibition law.  Upon his trial he was convicted and sentenced to from one to two years in the penitentiary.  His motion for a new trial, based upon the usual general grounds and three special grounds, was overruled and he excepted.

In the brief of counsel for the defendant we find these statements:  "The defendant introduced evidence which tended to establish an alibi, using three witnesses, but no assignment of error is or has been made with reference to the defense of an alibi, either as to the admission or exclusion of evidence nor as to the charge of the court on the law of alibi.  The defendant Paul Caldwell does not insist on the general grounds of his motion for a new trial, as contained in the original motion, and the same are now expressly abandoned."  We shall, therefore, treat these features of the case as eliminated.

■ In special ground 1 it is contended that the defendant objected to any evidence of Harry R. Scroggins, Sheriff of Cobb County, a rebuttal witness for the State, with reference to what certain dogs (bloodhounds) did when they were carried to the scene of the crime for the reason that no proper foundation had been laid as required by this court in *Troup* v. *State,* 26 *Ga. App.* 623 (107 S. E. 75); *Aiken* v. *State,* 16 *Ga. App.* 848 (86 S. E. 1076).  While the sheriff, Harry R. Scroggins, was on the

stand, as a rebuttal witness, the following took place: "Q. [By Mr. Manning, solicitor] Did you use the bloodhounds any that morning? A. Yes, sir. Mr. Vandiviere [Counsel for the defendant] I object to any evidence about bloodhounds until the proper foundation is laid, under the statute. Q. [By the solicitor] Did you undertake to use the bloodhounds in any way in connection with this defendant or with some one else? A. No, sir. I don't think so. Q. Did the dogs run any there that day? A. Yes, sir. Q. Where did they run to? Mr. Vandiviere: I object to any evidence in reference to bloodhounds until the proper foundation is laid, as laid down by the Court of Appeals. The Court: I think you had best leave it out. Q. [By the solicitor] On that day did you see Allen Hawks anywhere? A. Yes, sir." On cross-examination of the witness Harry R. Scroggins the following questions were asked by Mr. Vandiviere: "Q. When you went to Paul's house you had some dogs in your car? A. Yes, sir, in the county police car, not my car; I was in the county police car with Amos Bates. Q. And with the dogs? A. Yes, sir. Q. And you arrested Paul Caldwell? A. Yes, sir. Q. And he got in the same car with you and Amos? A. Yes, sir, in the front seat. Q. With the dogs? A. Well, the dogs was in the back. Q. Between the seats in the back? A. Yes, sir, all over the seats there, except one Negro was in the back. Q. How many dogs? A. Three or four, it was full. Q. Then you rode with Paul Caldwell and Amos Bates and those dogs all in the car to the distillery, didn't you? A. Yes, sir. Q. You went from Paul's house down the road something like a mile to where a Broadnax Negro lived and then left that road, that public road then on a little side road? A. Yes, sir, that was a side road going out to Paul's house off of the main road. We came out that road to the Macedonia road. Q. Then you went down that road to the Broadnax woman's house? A. Yes, sir. Q. And then on down to the distillery? A. Yes, sir. Q. Carrying Paul with you all the while? A. Yes, sir. Q. And carrying Amos Bates and those dogs? Yes, sir, and the Negro. Q. And you got down to the distillery with the dogs still in the car? A. Yes, sir. Q. And Paul got out of the car? A. Yes, sir, he got out. Q. At the distillery? A. Yes, sir. Q. At your instructions or suggestions? A. I told

him he could come if he wanted to. Q. And at the time those dogs got out, didn't they? A. Well, yes, sir, I am pretty sure they got out. And they put them in a truck. Q. And those dogs paid no more attention to you than they did to Paul? Mr. Manning: We object to his proof of anything about the dogs. Mr. Vandiviere: I am trying to find out whether they were good dogs or not. The Court: Didn't you object to his going into any evidence about the dogs? Mr. Vandiviere: I am trying to find out if they were dogs suitable for the discovery of the scent of a human being as laid down in the 26th Court of Appeals, page 623. I am undertaking to lay that foundation now by this officer. The Court: Since he hasn't gone into the dog question, under your objections, I don't think you can go into it. Mr. Manning: I withdraw any objections to it; let him go into it. Q. [By Mr. Vandiviere] The dogs didn't notice anything there—They didn't pay any more attention to Paul than they did to you? A. Well, I don't know, a thing like that, the dogs were not still, they weren't still in the car, they were moving around in the car and glancing around. Q. [By Mr. Manning, on the re-direct examination] Since they have untied the dogs now, I will ask you, did you let the dogs out there on the ground about the distillery? A. They were on a leash, out there on a leash. Q. Was the trainer with them? A. Yes, sir, he was with them all the time. He was in the back with them and they put them in the truck. Q. Did they strike a track there and go anywhere? A. Yes, sir. Q. Where? A. Well they went out across and up the branch. Mr. Vandiviere: We object to that, unless he lays the foundation laid down by law. The law fixes that. The Court: Go ahead. Q. Tell these twelve citizens here what the dogs did? A. Well, they went out up the branch and across the cotton field into the Macedonia road—Mr. Vandiviere: We object to any evidence here with reference to what any bloodhounds did, for the reason that he has not laid the proper foundation, as is laid down by the Court of Appeals of the State of Georgia, in the 26th Court of Appeals, page 623, and in the 16th Court of Appeals, page 848, that before any evidence can be introduced with reference to bloodhounds that you should first produce evidence as to the pedigree of those dogs, and that the evidence should be clear

that those dogs are of a breed of dogs that have the ability to discriminate the scent of the tracks of a human being, and that those dogs were at the time in the custody and control of the party who trained them and has had them in his possession, and that that person who had them is a competent trainer of dogs; and until and unless those requisites as laid down by our law are complied with no evidence with reference to those dogs can be adduced on this trial, and for that reason I object to the sheriff's testimony. The Court: I think that would be a good objection in the first instance, but since you went into the question of the dogs yourself, I will overrule your objection. Q. [By the solicitor] Go ahead, please. A. Well, they went up the creek or branch a part of the way and came across a cotton patch and out into the Macedonia road and up the road to the Maclin road, and right at the Maclin road is where we learned that the dogs couldn't go any further. Q. Was there any car tracks in the road? A. Well, it is a paved road, cars going by there all the time. Q. Were you there when the dogs reached the pavement? A. Yes, sir. Q. Did you arrest Paul Caldwell at that time. A. No, sir. Q. Did you arrest him after that? A. Yes, sir. I left the highway there and went back by his house and got him; I told Mr. Bates we would go. down there and get him. Re-cross examination. By Mr. Vandiviere: Q. What were the names of those dogs? A. I don't know the dogs. Q. Whose dogs were they? A. I suppose they were the county dogs; they called for the county dogs."

As the trial of the case began, the State introduced one witness, Marshall Bryant, and rested its case. The solicitor did not question or even refer, in his questioning of this witness, to the dogs and their conduct which is now in question. However, the defendant on cross-examination of Bryant questioned him relative to such dogs and in his direct examination of two of his own witnesses, counsel for the defendant questioned these witnesses with reference to the dogs in question. The defendant, after introducing his witnesses and making his statement to the jury, closed his case, and it was at this point that the State placed the sheriff, Harry R. Scroggins, on the stand as a witness in rebuttal and after asking certain questions not related to the dogs the solicitor asked the sheriff several questions with reference to the

dogs (bloodhounds). Upon the objection of the defendant, on the ground that any reference to the bloodhounds was inadmissible until a proper foundation had been laid, the court sustained the objection. Upon cross-examination of the sheriff, the defendant's counsel again returned to the subject of the dogs and thereafter asked many questions relative to them and finally elicited from the sheriff the answer that "the dogs got out of the car [at the scene of the crime] and those dogs paid no more attention to you [the sheriff] than they did to Paul [the defendant]." Whereupon the State objected to the proof of anything about the dogs, but immediately the State withdrew its objection. The defendant then proceeded with his cross-examination relative to the dogs and thereafter the court allowed the solicitor to show what the dogs then did at the time referred to in the defendant's cross-examination.

The testimony concerning the conduct of the dogs was allowed by the court over the objection that no foundation had been laid as required in *Troup* v. *State*, supra and *Aiken* v. *State*, supra. The court stated: "since you went into the question of the dogs yourself, I will overrule the objection."

It seems to us that the defendant having first introduced the matter of the conduct of the dogs on cross-examination of the State's witnesses as well as on the direct examination of two of his own witnesses, it was not reversible error for the court, under the circumstances, to allow the State to examine its witness further merely to explain and neutralize the evidence which the defendant had brought out on cross-examination with regard to the same subject. See, in this connection, *Aycock* v. *State*, 62 *Ga. App.* 812 (10 S. E. 2d, 84).

■ In special ground 2 error is assigned upon the court's failure to charge: "Before you can consider the conduct of the dogs you must find that the dogs were accurate, certain, and reliable in following the trail of human footsteps, and if you find this, then the evidence of the conduct of the dogs and its result may be considered, together with all the other evidence in the case, as a circumstance in determining the guilt or innocence of the defendant." The error assigned upon the court's failure to give this charge is "said charge being pertinent, applicable and absolutely essential under the facts of the case, and being

absolutely essential as a part of the minimum charge which the court was required to give, no request in writing was necessary. The court charged the jury absolutely nothing with reference to the dogs, although the court admitted [certain] testimony with respect thereto."

" 'It has been held that the judge need not confine himself to the abstract, but may instruct the jury with reference to the concrete.' *Blumenthal* v. *State*, 121 *Ga.* 477 (49 S. E. 597). To this end, in absence of a timely written request, the judge in his charge to the jury, may enumerate the acts and conduct consti- tuting all the elements of . . (the offense charged in the in- dictment), and then instruct the jury that if these be established by proof, such acts and conduct would be sufficient to authorize the conclusion that the defendant is guilty of [the crime charged]." *Martin* v. *State*, 57 *Ga. App.* 346 (1) (195 S. E. 313). In *Pennaman* v. *State*, 58 *Ga.* 336 (4), 341, it is said: "The court may instruct the jury, that if they find, from the evi- dence, beyond a reasonable doubt, that all the allegations in the indictment are true, they should find the prisoner guilty. Such a charge is not like one which groups certain facts, less in ex- tent than the whole contents of the indictment, and submits their truth or falsity as decisive of guilt or innocence—compare 34 *Ga.* 263; *Tucker* v. *State*, 57 *Ga.* 503   Unless the jury are to find the prisoner guilty, when convinced by the evidence, be- yond any reasonable doubt that the whole of the indictment is true, the trial is work without an object." See, in this connec- tion, *Prior* v. *State*, 74 *Ga. App.* 226 (1) (39 S. E. 2d, 559); *Henry* v. *State*, 74 *Ga. App.* 378, 379 (39 S. E. 2d, 729). The charge of the court, when considered in its entirety, embraced the general principles of law applicable to the facts of the case. Here there was no request to charge and the court was not re- quired to single out one item of evidence and charge the jury the effect of it. The court had charged in effect that if the State failed to prove the defendant guilty of manufacturing whisky as charged in the indictment, he should be acquitted. This ground of the motion for a new trial is not meritorious.

■ In special ground 3 it is contended that while the court charged the jury, "Any one who is present at a distillery where whisky is being manufactured and who personally assists in its

manufacture is guilty of manufacturing whisky, and it is immaterial whether or not he owned the distillery, or whether or not he is hired to work there," the court erred in failing to charge the following: "The mere presence of a person at a place where liquors are being made is not unlawful; there must be some act which is necessary and essential to making such liquors." The court did not denominate it as a reason for finding the defendant not guilty that "the mere presence of a person at a place where liquors are being made is not unlawful; there must be some act which is necessary and essential to making such liquors," but the court did in effect charge that if the State failed to prove the defendant guilty of manufacturing such whisky as charged in the indictment he should be acquitted. This, we think, was sufficient, in the absence of any request to charge. " 'A trial judge must correctly and fairly present to the jury the contentions of the defendant if he attempts to state them, but he is not required to denominate reasons which would authorize a jury to acquit the defendant, and which, as matters of law, are fairly presented in his instructions to the jury, as contentions of the defendant.' *Moore* v. *State*, 1 *Ga. App.* 502 (1) (57 S. E. 1016). See, in this connection, *Jefferson* v. *State*, 74 *Ga. App.* 232 (39 S. E. 2d, 453)." *Henry* v. *State*, supra; *Prior* v. *State*, supra. This ground is without merit.

The court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*