**Joseph COSTELLO, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Joseph John CANNELLA, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 15800, 15801.**

United States Court of Appeals
Eighth Circuit.

May 20, 1958.

Rehearing Denied June 27, 1958.

Morris A. Shenker, St. Louis, Mo., and Sidney M. Glazer, Berkeley, Mo., for appellant Joseph Costello.

Norman S. London, St. Louis, Mo. (Mark M. Hennelly, St. Louis, Mo., was with him on the brief) for appellant Joseph John Cannella.

Forrest Boecker, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., was with him on the brief) for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

Joseph Costello and Joseph John Cannella prosecute these separate appeals from convictions upon jury verdicts for violating the Federal Firearms Act, to-wit: Sections 902(e) and 902(f), Title

15 U.S.C.A., and conspiracy to violate said sections.

Section 902(e) makes it "unlawful for any person * * * who has been convicted of a crime of violence * * * [including burglary, Section 901(6)] to * * * transport, or cause to be * * transported in interstate * * * commerce * * * any firearm * *." Section 902(f) makes it "unlawful for any person who has been convicted of a crime of violence [including burglary, Section 901(6)] to receive any firearm * * * which has been * * * transported in interstate * * * commerce * * *."

Each of the first two counts of the indictment charged the transportation of a described firearm in interstate commerce from Granite City, Illinois, to St. Louis, Missouri, by both defendants and that one of them, namely, Costello, had prior thereto been convicted of a crime of violence, to-wit: the crime of burglary in the Circuit Court of St. Francois County, Missouri. The third count charged against Costello alone that he unlawfully received a described firearm which had been transported in interstate commerce, having prior thereto been convicted of the said crime of violence. The fourth count charged both defendants with conspiracy to commit both offenses by transporting and causing to be transported in interstate commerce the described revolvers from Granite City, Illinois, to St. Louis, Missouri, and having Costello receive one of them, Costello having been convicted of the crime of violence prior to the inception of the conspiracy. The overt act charged was that Costello obtained several of the described revolvers from one Earl Lewis in Granite City, Illinois.

There was substantial evidence: that Costello lived in St. Louis, Missouri, and was the officer in charge of the Ace Cab Company in that city and Cannella, who also lived there, was in the employ of the Company as a supervisor and cab driver; that they were closely associated during the relevant period; that Costello had been convicted of burglary in St. Francois County, Missouri, in 1936; that Costello made inquiry of a witness, Harry Arnold, about getting a 38 caliber Smith and Wesson Terror model revolver and was referred to Earl Lewis, a licensed gun dealer in Granite City, Illinois; that Costello and his co-defendant Cannella together went to the gun shop of Earl Lewis and were there shown and talked about "guns" (throughout the trial the words "gun" and "revolver" were used as synonymous); and that Cannella came to the shop alone and ordered three guns which Earl Lewis undertook to obtain for him. He left a note with Lewis containing the telephone number of the Ace Cab Company where Lewis could reach him under the name of "Joe". When the guns had been delivered to Lewis he telephoned the Ace Cab Company and asked for "Joe", "the Joe that knew Earl Lewis" [both appellants are named Joe] and informed the Joe who answered that he had the guns. Cannella then went and got the three guns described as Smith and Wesson Chief Special 38 Caliber, numbered 65965, 69436, and 68897 respectively, which were identified without dispute and received in evidence at the trial. Cannella paid about one hundred and eighty dollars for them and signed the false name of Joe Overbeck as purchaser in the gun dealer's register together with a false address. One of the guns marked exhibit 6 was subsequently found, fully loaded, in the locked glove compartment of the automobile driven by Costello when he was arrested. The compartment was opened with a key which was in Costello's possession at the time of his arrest, although Costello denied having a key for the compartment.

Cannella made a statement to the F.B.I. officers in writing and signed by him to the effect that he bought the guns at the gun shop of Earl Lewis in Granite City, Illinois; transported them in interstate commerce from Illinois to Costello's Ace Cab Company office in St. Louis, Missouri, and delivered them to Costello; all at the direction of Costello; and that the money for the purchase was furnished him by Costello. He also testified before

the grand jury, which returned the indictment herein, as to his intimate association with Costello and his knowledge of Costello's former conviction of law violation and imprisonment. Both defendants plead not guilty, testified in their own behalf on the trial, and denied the charges against them. Further details of the evidence will be brought out in our discussion of the points argued by the appellants respectively, for reversal. Each appellant is represented by his own able counsel as he was on the trial.

Appellant Costello's contentions for reversal are summarized as follows: that the court erred (1) in treating the crime of burglary for which he was convicted in 1936 as the "crime of violence" defined as "burglary" in Section 901(6) of the Firearms Act; (2) in refusing to suppress the revolver obtained by illegal search of his car by St. Louis Police officers and receiving their testimony in evidence; (3) in denying him a separate trial; (4) in refusing to require production for inspection of all of Cannella's testimony before the grand jury; (5) in admitting testimony given by Cannella to the grand jury on April 23, 1957; (6) in allowing the government to cross examine and impeach witnesses called by it; (7) in refusing to grant a mistrial on account of certain incidents at the trial; (8) in instructions given and refused; and (9) in denying Costello's motion for acquittal at the close of the evidence for insufficiency of the evidence.

Appellant Cannella presents all of the contentions for reversal of his conviction that are argued on behalf of Costello— each appellant from his own angle—and also stresses that the court erred in refusing to dismiss the case against him; (1) on account of his lack of knowledge of Costello's conviction of a crime of violence if such there was; (2) on account of his compelled appearance before the grand jury; and (3) because the court erred in admitting into evidence his oral and written statements to the F.B.I. agents.

## Opinion as to Costello.

1. The prior judgment of conviction entered against Costello in St. Francois County, Missouri, in 1935, recited that he was found guilty of burglary and larceny "as charged in the information" and the information referred to (offered by defendants and excluded) charged that on or about the 26th day of May, 1935, Costello feloniously and burglariously did forceably break into and enter a certain jewelry store with intent to steal certain described jewelry therein and did steal it.

Costello contends that the word burglary used in Section 901(6) must be given the meaning it had at common law and in any event does not include the crime Costello was shown to have committed in 1936. "Burglary, at common law, is the breaking and entering, in the nighttime, of the dwelling house * * * of another, with intent to commit a felony therein." 9 Am.Jur. Burglary, Section 1, page 239; 23 A.L.R. 288.

The contention is not without weight as the Supreme Court has declared "that where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common law meaning." United States v. Turley, 352 U.S. 407, 411–412, 77 S.Ct. 397, 399, 1 L.Ed.2d 430. But the Court in the same opinion declared that although criminal statutes are to be construed strictly "this does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature." It is appropriate to consider the purpose of the Act.

The Act here involved was passed in 1938 and by that time the law against burglary in practically all the states, certainly in all the states of this circuit, had developed so as to include not only common law burglary, but also the acts charged and adjudged against Costello as constituting burglary in this case. State v. Stephens, 150 La. 944, 91 So. 349, 23

A.L.R. 286, 288. The sections of the Firearms Act in question were directed against persons who had been convicted of "crimes of violence" and the reason for including burglary in the definition was that burglary has always been and now is universally so regarded. It is unreasonable to infer that Congress intended the word burglary as used in Section 901(6) to be given the restricted meaning that it had at common law. Counsel has argued that if the term burglary in the section be not governed by the common law definition, any state legislation calling a traffic offense by the name of burglary would bring it within the federal statute. But as stated by the Court of Appeals for the First Circuit in Cases v. United States, 131 F.2d 916, 924: "It does not seem to us that there can be a sufficiently wide variety in the definition in the different states and territories of the crimes listed to make this classification unconstitutional [as discriminatory]."

But if in some cases an instance should be presented where state legislation defines as burglary some offense that is not a crime of violence, a question may be presented that is not here involved.

The question raised for the appellants as to the meaning to be given "burglary" was considered by the District Court of Colorado in United States v. Kelly, 146 F.Supp. 747. The defendant, there tried under the Firearms Act, had been previously convicted like Costello of so called second degree burglary under the Missouri statute, V.A.M.S. §§ 560.040, 560.-045, 560.095. We quote with approval the following observations the court made when considering the motion for judgment of acquittal:

"It would be a strange holding indeed for this Court to say that it was the intent of Congress that one having been convicted of burglary by breaking into a building other than a dwelling house at a time other than between sunset and sunrise is more fit to have in his possession a firearm than one whose nefarious activities have been limited to dwelling houses at night.

\* \* \* \* \* \*

"Moreover, in the opinion of the Court, on the face of the statute, Congress showed its intention that the designated crimes of violence were to take their meaning from the statute of the states where the conviction was had. Following the description of certain crimes of violence, Section 901(6) of 15 U.S.C.A. concludes by setting forth,

" 'or assault with intent to commit any offense punishable by imprisonment for more than one year.'

"Can it be said that 'any offense' means 'any offense at common law?' The answer has to be in the negative for the term 'any offense' is limited by the minimum imprisonment meted out for the assault to commit such offense, and this must be governed by state law, for the punishment at common law for assaults with intent to commit felonies 'varied according to the discretion of the court.' Wharton, Criminal Law, 12th ed. § 840, p. 1126." 146 F. Supp. 747, 752–753.

Compare Braswell v. United States, 10 Cir., 224 F.2d 706, where the defendant, accused under the Firearms Act, had been convicted of burglary in a Texas court. In Texas as in Missouri, burglary includes daytime breaking and entering of buildings other than dwellings, but the record of the case indicates that the Court of Appeals for the Tenth Circuit was not even called on to consider the question argued here. It affirmed conviction.

No error is found here in the rulings to the effect that the "burglary" on account of which Costello was charged and convicted in 1935 was "burglary" within the Firearms Act.

█ 2. Costello was arrested by St. Louis Police Officers and taken to the city jail where he was searched and questioned and discharged. The Cadillac car which he was driving when arrested

was also searched. He denied having a key to the glove compartment in the car, but the police officers found one of the keys taken from him fitted the glove compartment lock. The officers opened the compartment with the key and took possession of the revolver contained in it, which was shown to be the revolver described in the indictment as having been received by him. The arrest, search, and seizure were found to have been illegal under Missouri law in a proceeding in the Missouri State Court and it is not contended for the government that they were legal under the federal law. But it was not shown that any federal officer took part in the search and the court's refusal to suppress the gun and receiving it in evidence were sanctioned by the decision of this Court in Jones v. United States, 8 Cir., 217 F.2d 381, 382–383. Cf., United States v. Benanti, 2 Cir., 244 F.2d 389, 392. The court's refusal to suppress the guns was without error.

3. This case presented the situation where one of the two defendants had given a statement orally and in writing to agents of the F.B.I. before the indictment was found, concerning the transactions upon which the indictment was based, and the other defendant had not done so. In pre-trial proceedings and commencing at the opening statement and on many occasions during and after the trial, and on this appeal, Costello, who had not made any statement, has earnestly and persistently contended that he was entitled to a severance and trial apart from Cannella.

But Rule 8(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., provides that two or more defendants may be charged in the same indictment if they are alleged to have participated in the same transaction or in the same series of acts or transactions constituting the offenses charged. Under Rule 13 the court may order two or more indictments to be tried together if the offenses and the defendants could have been joined in a single indictment.

In this case the two defendants were closely associated in their work and otherwise. The charge against them in counts one and two, supported by the evidence, was that one defendant was an aider and abettor of the other in transporting the guns and therefore both were charged as principals. The fourth count was for conspiracy and guilty participation by both was necessary to convict either. It was necessary to show the acts of both defendants at the relevant times in order to obtain a realistic picture of the transactions involved. It is true that in trying them together the statement made by the one who had made it after the acts was hearsay and not probative of guilt as to the other, but the record in this case shows that the law to that effect was stated to and impressed upon the jury by the court and by each and all attorneys participating in the trial literally scores of times.

■■ The ultimate question whether or not Costello aided and abetted Cannella in transporting the guns or whether they conspired to transport them or to have Costello receive them was not of such complicated nature that the evidence against each could not be separately considered as to each. It is firmly settled for this Court that "the mere fact that admissions have been made by one [defendant] which are not evidence as against the other is not a conclusive ground for ordering the parties to be tried separately." Kansas City Star Co. v. United States, 8 Cir., 240 F.2d 643, 652. In Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 19 L.Ed. 101, the Supreme Court said:

"* * * The trial judge here made clear and repeated admonitions to the jury at appropriate times that Hollifield's incriminatory statements were not to be considered in establishing the guilt of the petitioner. To say that the jury might have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict. Our theory of trial relies upon the ability of a jury to follow instructions. There is noth-

ing in this record to call for reversal because of any confusion or injustice arising from the joint trial."

We find no error requiring reversal because of the joint trial of the defendants.

4 & 5. The evidence was that Cannella first gave statements to agents of the F.B.I. on April 10, 1956, and was first called before the grand jury to testify on April 18, 1956. The Assistant United States Attorney in the Eastern District of Missouri, Forrest Boecker, testified that on April 17, 1956, he had caused an indictment to be drawn up charging Costello alone with the offenses later charged against the two defendants in counts one and two of the indictment. He put questions to Cannella on his first appearance before the grand jury but did not question him as a prospective defendant or have in mind that Cannella was implicated in the proposed charges against Costello. Mr. Boecker said that it was the view of the government at that time that [Cannella] was not an object of suspicion or a defendant. He said "it is a fair statement to say that after I heard Cannella's testimony he was joined as a defendant." No evidence was adduced as to what Cannella testified to on April 18, 1956. He was subpoenaed again and testified before the grand jury on April 23, 1956. "He was warned [as to his constitutional rights] on April 23rd, but he was not warned when he appeared on April 18th." All the testimony he gave on the 23rd was made available to appellants. The prosecutor read part of it to the jury on the trial. The defendants read substantially all the rest but the court refused to compel the government to produce for inspection a copy of his testimony at his first appearance.

■■ The ground on which the production was resisted was that there was no showing of cause to invade the secrecy of the grand jury in respect to it. In cases of alleged perjury before a grand jury a transcript of an accused's testimony there given must be made available, but no such charge was here involved. A trial court unquestionably had the power under Rule 6(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., to order the grand jury proceedings transcribed and produced. Such power should be exercised only where there is a clear showing that the ends of justice require it. Lawn v. United States, 355 U.S. 339, 362, 78 S.Ct. 311, 2 L.Ed. 321; Herzog v. United States, 9 Cir., 226 F.2d 561, 566. No such showing was made here and we find no prejudice to either defendant resulting from the court's refusal to compel the production and no error.

■ On the other hand the government offered and the court received statements which Cannella voluntarily made to the grand jury on his second appearance after he had been warned of his rights, to the effect that he had knowledge of Costello's prior conviction of a crime. His knowledge was not derived from seeing the record, but in his employment under and association with Costello he had heard it talked about and "it had been published in the newspaper". It is argued that "Costello was damaged by this evidence because it showed that [because of the way Cannella had become informed] Costello had an ill name with his neighbors" and therefore "it opened the issue of his bad character". But whether or not Cannella knew of Costello's prior conviction was an essential element of the charge of the indictment to be inquired into and established. It was not error to receive evidence competent to prove a charge against the defendant because it may also prove more against him than he is charged with. We do not sustain either of the points we have numbered (4) and (5).

■■ 6. As to the complaint that the prosecutor was permitted to cross examine and impeach witnesses whom he had called, it appeared that the government witnesses Goldstein and David Cannella each testified contrary to a statement he had given to the government. When that developed the court permitted the government to interrogate the witnesses respectively concerning their former statements. The witness Gold-

stein also claimed in effect that government officers had wrongfully taken him from his home to the grand jury without opportunity to either dress himself or communicate and subjected him to wrongful coercion. The court permitted the officers concerned to testify in rebuttal to their serving of the subpoena upon Goldstein in ordinary and proper course. We do not find that the court abused its discretion either in permitting the question of the hostile witnesses—see and compare Meeks v. United States, 9 Cir., 179 F.2d 319; Carrado v. United States, 93 U.S.App.D.C. 183, 210 F.2d 712, certiorari denied Atkins v. U. S., 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140; United States v. Graham, 2 Cir., 102 F.2d 436, certiorari denied 307 U.S. 643, 59 S.Ct. 1041, 83 L.Ed. 1524; Moomaw v. United States, 5 Cir., 220 F.2d 589; Doto v. United States, 96 U.S.App.D.C. 17, 223 F.2d 309, certiorari denied 350 U.S. 847, 76 S.Ct. 59, 100 L.Ed. 754—or in introducing the impeaching testimony which tended to protect the dignity of the court officers. State v. Sharpe, 138 S.C. 58, 135 S.E. 635; People v. Gross, 230 Mich. 653, 203 N.W. 534; Martin v. State, 80 Tex.Cr.R. 199, 189 S.W. 264; Caldwell v. State, 82 Ga.App. 480, 61 S.E.2d 543; Commonwealth v. Cohan, 307 Mass. 179, 29 N.E.2d 693; Tice v. State, Okl.Cr., 283 P.2d 872.

■ 7. Complaint is made of three instances during the trial when the court either in voicing its own reaction or in sustaining objections by the prosecution spoke somewhat sternly to defendant's counsel. The defense of the cases was carried on with earnestness, zeal, and skill by able counsel and we have not failed to fully consider the contention that the court's remarks were unfair and unjust. We think the colloquies complained of were not sufficiently important to merit repetition and we conclude that the defendants were in no wise deprived of the effective assistance of their counsel by any improper action towards them or statements by the court to them. Goldstein v. United States, 8 Cir., 63

F.2d 609, 613. On the contrary, the trial was conducted with fairness and dignity.

■ 8. As to instructions given and refused. After instructing that Costello could be found guilty on the first count only on finding that he had requested and directed Cannella to transport the gun in interstate commerce, Costello having theretofore been convicted of burglary, the court then instructed that Cannella could be convicted upon that count only if Costello was found guilty thereon. It is argued that the instruction containing "an assertion of interrelationship of guilt" was erroneous under the decision in United States v. Klass, 3 Cir., 166 F.2d 373, 380, 381. The contention is without merit. In this case commission of the crime charged in the count was dependent, as the court charged, upon its having been instigated by the ex-convict, Costello. If any element of guilt on Costello's part was lacking Cannella could not be convicted.

■ The court instructed upon the credibility of impeached witnesses that the jury "may accept such portions of testimony of such witness who has been impeached or who has knowingly testified falsely as you believe to be true and credible" and also that if either of the defendants made statements to investigating officers regarding the matter under inquiry and pertinent to the inquiry contrary to proven fact and did so willingly and with knowledge of the falsity "you are at liberty to consider that circumstance as evidence of that defendant's guilty conscience."

The instructions as a whole which were given as to credibility of witnesses were reasonable and proper.

■ The court did not read to the jury the statute under which the indictment was laid, but the court stated all the elements necessary to a finding of guilty. That was fully sufficient in the case of a crime of such few and simple elements as was here involved. Holland v. United States, 10 Cir., 209 F.2d 516, affirmed 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Heine, 2

Cir., 149 F.2d 485, certiorari denied 325 U.S. 885, 65 S.Ct. 1578, 89 L.Ed. 2000; United States v. Capitol Meats, 2 Cir., 166 F.2d 537, certiorari denied 334 U.S. 812, 68 S.Ct. 1018, 92 L.Ed. 1743; Lewis v. United States, 10 Cir., 49 F.2d 272.

■ The court gave the jury what has been referred to as the "Allen instruction" in which the jury was urged to try to agree upon a verdict and we find no error in giving the instruction. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528; Wright v. U. S., 8 Cir., 175 F.2d 384, certiorari denied 338 U.S. 873, 70 S.Ct. 143, 94 L.Ed. 535; Nick v. United States, 8 Cir., 122 F.2d 660, 138 A.L.R. 791, certiorari denied 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550; Bowen v. United States, 8 Cir., 153 F.2d 747, certiorari denied 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611.

■ In addition to his contention that he had not been convicted of "burglary" within the Act, Costello also contended on his motion for instructed verdict that there was insufficiency of the evidence that he in any way participated in the purchase of the guns. We think the competent circumstantial evidence as outlined herein required submission of that question to the jury.

### Opinion as to Cannella.

Cannella was interrogated by F.B.I. agents and made a voluntary statement to them as follows:

"I, Joseph John Cannella, make the following voluntary signed statement to Special Agents Herbert K. Moss and Earl C. Porter, who have identified themselves to me as Special Agents of the Federal Bureau of Investigation. I have been advised that I do not have to give a statement and that any statement I do make may be used against me in a court of law. No threat or promise of reward have been made to me in order to get me to give this signed statement. I have been advised of my right to consult with an attorney prior to furnishing a statement. I was born April 12, 1915, at St. Louis, Missouri. I have been employed as an Ace Cab owner and supervisor for Ace Cab Company since about November, 1953. I presently reside at 4713 Hatz, Northwoods, Missouri. About the first part of December, 1955, Joseph Costello said to me at the Ace lot 'Let's take a ride to Granite City, Illinois', and Costello and myself then drove in Costello's Cadillac automobile to Granite City, Illinois. Upon arrival in the vicinity of Granite City, Costello said, 'We have to look around for a gun shop'. However, Costello and I drove directly to Earl Lewis Gun Shop in Granite City, Illinois, in Costello's blue Cadillac convertible. This is the only stop we made. Upon arrival at the Earl Lewis Gun Shop in Granite City, Illinois, there was only one man present whom I know to be Earl Lewis, and he provided a catalogue of guns and Costello looked in the catalogue and picked out three guns from the catalogue and Costello told Lewis to order three guns for Costello and to call me when they arrived. I told him to call 'Joe, the supervisor', and to aid him in doing so I wrote the notation 'Joe, Main 1–8495'. Costello and I then returned to St. Louis, Missouri, and approximately a week later I received a radio call from the Ace Cab dispatcher requesting I call the Ace Cab office. I did call the Ace Cab office and a girl in the office told me to call a certain number. I did call this number and it was Earl Lewis. He advised me the guns that Costello had ordered had arrived. I then had the Ace Cab office tell Joe Costello that the guns had arrived at Lewis Gun Shop at which time Costello gave me $180 in cash, and I proceeded to the Earl Lewis Gun Shop, Granite City, Illinois, and upon arrival was advised by Lewis that the guns were not the exact type as ordered by Costello. From the Earl Lewis Gun Shop I then called Costello and he told me if the guns were not as he had ordered for me not to accept them. I did not accept these guns, and returned to St. Louis. Upon arrival at the Ace Cab lot I offered the $180 to Costello which $180 he had originally provided me to buy the three guns, at which time Costello directed me to put

the $180 in an envelope and give to Joe Muth, and have Muth put the envelope containing the money in the office safe at the Ace Cab office, which I did. About one week thereafter I again received a radio call from the radio dispatcher of the Ace Cab Company advising me to call the Ace Cab office, which I did. Some girl in the office advised me to call a certain number, which I did, which was the Earl Lewis Gun Shop, Granite City, Illinois. Lewis told me the guns that Costello had originally ordered had arrived. I then told Joe Muth that I wanted the envelope out of the office safe, which he gave me, and on the same date I made the telephone call to Lewis I proceeded to the Earl Lewis Gun Shop, Lewis gave me the three guns which Costello had originally ordered, and I gave Lewis $180 as a purchase price for these three guns, and Lewis gave me some change, exact amount not recalled by me. However, it was only a few dollars, as I recall that the purchase price for each gun was approximately $59. This was the sum of $180 that Joe Costello had originally given to me as a purchase price for these guns as referred to above. Before departing from Lewis Gun Shop I signed the name 'Joe Overbeck, 4186 Kingshighway', city and state not shown, as a purchaser for these guns. I then returned to the Ace Cab lot, St. Louis, Missouri, with the three guns in the cartons, took them in and placed them on a desk in Joe Costello's private office. In my presence Costello opened the cartons and looked at the guns. I have not seen these guns since delivering them to Costello in his private office. Sometime later, on the day or the day after Costello was arrested by the St. Louis Police Department in early 1956 * * *. Special Agent Porter has exhibited to me a longhand entry dated December 22, 1955, in the name 'Joe Overbeck, 4186 Kingshighway'. I wish to state that this is my handwriting. Also Mr. Porter has exhibited to me a note 'Joe, Main 1–8495', which I state is likewise in my handwriting. I provided this note with the name 'Joe' to Earl Lewis on my first visit to Lewis Gun Shop. The entry 'Joe Overbeck, 4186 Kingshighway' was made by me when I received the three above-mentioned guns from Lewis."

Other statements made to the agents by Cannella before he made the above were checked as to veracity by the agents in his presence by telephone and discredited. Thereupon he gave the above account, which he said was the truth and at the conclusion of it he said he was fearful that it would come to Costello's attention that he had provided the information and "he did not think his life would be worth a nickel." He began rubbing his hands over his forehead and said "My God, My God, what is going to happen to me" and he became ill.

■ (1) It is strenuously argued for both defendants that the court erred in receiving the testimony of the agents concerning Cannella's conduct and exclamations at the time he gave them his statement. The circumstances bore not only upon the admissibility of Cannella's statement against his interest but also upon its credibility. It was a voluntary statement freely made and there was no error in receiving it in evidence together with the testimony as to the circumstances surrounding the giving of it.

(2) The government offered in evidence and the court received the testimony which Cannella gave to the grand jury at his second appearance before it on April 23rd, concerning his knowledge of Costello's criminal record. Cannella had been duly warned of his rights and gave the testimony voluntarily. Both as a witness before the grand jury and as a witness in his own behalf at the trial he denied knowing the specific crime for which Costello had been convicted in 1935. The court instructed and it is conceded that Cannella could not be convicted unless "he knew that Costello had been convicted of burglary as charged in the indictment". The government "submits that such knowledge was imputed to [Cannella] by circumstantial evidence and by [his] partial admission". He admitted before the grand jury that he

knew Costello was reputed to have a criminal record and that he had been in prison and when he obtained the guns (he said for Costello, with money supplied by Costello) he signed a fictitious name on the dealer's register and gave a false address. When he was first interrogated by the F.B.I. agents he gave a false account of the transaction and when he changed his story and involved Costello he evinced a guilty conscience and fear of consequences.

 We are not cited to precedents as to the degree of proof of knowledge of the principal's prior crime that is required to support conviction of an aider and abettor under the sections of the Act here involved. We think the situation is comparable to cases where the accusation is that of receiving stolen goods knowing them to have been stolen. It has long been settled that such knowledge may be imputed beyond reasonable doubt by circumstantial evidence.

"The requisite guilty knowledge need not be actual, direct, positive, or absolute, but may be constructive, implied, or circumstantial. It is not essential to a conviction that the requisite guilty knowledge that the goods were stolen should be actual, direct or positive and absolute, such, for instance, as knowledge acquired by having personally witnessed or observed the theft, or by information of the theft from persons who had personal knowledge, such as eye witnesses or the person from whom the goods were received; the requisite knowledge may be circumstantial or deductive, and constructive or implied knowledge through notice of facts and circumstances from which guilty knowledge may be fairly inferred satisfies the requirements as to knowledge. 76 C.J.S. [Receiving Stolen Goods] § 8, p. 12."

In this case Cannella's admission that he knew that Costello had a criminal record and had been imprisoned for crime, coupled with his conduct in giving a false name and address to the gun dealer and his attempt to cover up Costello's connection with the purchase and trans-portation of the guns by false statements to the officers, constitute circumstantial evidence of his guilty knowledge sufficient to support the verdict of the jury on the issue.

Each of the assignments of error that have been discussed in relation to Costello have also been carefully considered in respect to Cannella, but we find the conviction of Cannella was without error.

Although some further points have been argued and have been fully considered, they lack merit and have not required discussion.

Both Costello and Cannella were accorded a fair trial and the convictions and sentences of thirty months as to Costello and eighteen months as to Cannella are affirmed.

Affirmed.