UNITED STATES v. CARDISH et al.

(District Court. E. D. Wisconsin. January 20, 1906.)

1. CRIMINAL LAW—FEDERAL STATUTES—CONSTRUCTION—USE OF COMMON-LAW TERMS.

When Congress in a statute refers to or adopts a common-law offense without further definition, the common-law definition must obtain.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 8–12.]

2. ARSON COMMITTED ON RESERVATION—CONSTRUCTION OF STATUTE.

Act March 3, 1885, c. 341, § 9, 23 Stat. 385 [U. S. Comp. St. 1901, p. 362], which provides for the trial and punishment of any Indian who shall commit any one of the crimes enumerated, including "arson," upon an Indian reservation, uses such term in its common law meaning and is in effect an extension of the provisions of Rev. St. § 5385 [U. S. Comp. St. 1901, p. 3648], punishing the offense of arson within a fort, dockyard, etc., to the same offense committed by an Indian on a reservation; and an indictment charging an Indian with the burning of a "building" on a reservation, not averred to have been a dwelling house, nor occupied as such, does not state an offense thereunder.

On Motion to Quash Indictment.

H. K. Butterfield, U. S. Atty.

M. G. Eberlein, for defendants.

QUARLES, District Judge. This is a motion to quash an indictment framed under section 5386 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3648]. The indictment is in the words and figures following, to wit:

"The grand jurors of the United States of America, duly impaneled and sworn in and for the said eastern district of Wisconsin, in said district court upon their oath present: That Louisa La Motte and Lizzie Cardish are Indians, and were on the 17th day of January, A. D. 1905, each Indians, to wit, Menominee Indians, members of the Menominee Indian tribe, a tribe of Indians then occupying a reservation within the boundaries of the state of Wisconsin, called the Menominee Indian reservation, theretofore set apart by the United States as an Indian reservation for the use of the said Menominee Indian tribe, and then so occupied by said tribe, and that the said Louisa La Motte and Lizzie Cardish on the 17th day of January, A. D. 1905, in the daytime of said day, they then and there each being such Indian, as aforesaid, namely: a member of the said Menominee Indian tribe, did, within the limits of, and upon the Menominee Indian reservation, in said district and within the jurisdiction of this court, the said reservation being then within the boundaries of a state of the United States, to wit, the state of Wisconsin, a certain building of, and the property of the United States of America, to wit, a certain building used as a schoolhouse and building, and called the Menominee Indian Training School building there situate as aforesaid, feloniously, willfully and maliciously set fire to, and the said building then and there by said firing as aforesaid, feloniously, willfully and maliciously did burn and destroy, wherefore the grand jurors, aforesaid, upon their oath aforesaid, do say: That the said Louisa La Motte and Lizzie Cardish, they each being then and there such Indian, as aforesaid, did on the 17th day of January, A. D. 1905, commit the crime of arson agaist the property of the United States of America, within the boundaries of a state of the United States, and within the limits of an Indian reservation, as afore described, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

It will be observed that the defendants are Indians belonging to the Menominee tribe, and living upon the Menominee reservation within this state, and that by this ·indictment they are charged with burning "a certain building of and the property of the United States of America to wit, a certain building used as a schoolhouse and building, and called the 'Menominee Indian Training School Building,' which was upon the Indian reservation set apart by the government for the use of said Menominee Indian tribe."

The indictment is attacked upon the ground that it does not state an offense cognizable by this court. Stated in other words, the contention is that there is no statute of the United States applicable to an Indian upon an Indian reservation which creates such an offense as is set out in the indictment. We may start with the fundamental proposition that there are no common-law offenses against the United States. United States v. Eaton, 144 U. S. 687, 12 Sup. Ct. 764, 36 L. Ed. 591. In order to sustain this indictment, therefore, we must be able to find some federal statute reaching the case, which has been extended over the Indians resident upon a reservation set apart ·for the occupancy of an Indian tribe, and conferring jurisdiction upon this court. The contention of the government is that this has been done by act March 3, 1885, c. 341; 23 Stat. 385 [U. S. Comp. St. 1901, p. 362], section 9 of which reads as follows:

"That immediately upon and after the date of the passage of this act all Indians, committing against the person or property of another Indian or other person any of the following crimes, namely, murder, manslaughter, rape, assault with intent to kill, arson, burglary, and larceny within any territory of .the United States, and either within or without an Indian reservation, shall be subject therefor to the laws of such territory relating to said crimes, and shall be tried therefor in the same courts and in the same manner and shall be subject to the same penalties as are all other persons charged with the commission of said crimes, respectively; and the said courts are hereby given jurisdiction of all such cases; and all such Indians committing any of the above crimes against the person or property of another Indian or other person within the boundaries of any state of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts and in the same manner, and subject to the same penalties as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."

This legislation was a new departure. For the first time Congress undertook to punish an Indian living in a reservation for a crime committed against another Indian when such reservation is located within the limits of a state. Its constitutionality was promptly challenged. The Supreme Court, in U. S. v. Kagama, 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228, upheld the legislation. Thus it appears that the crime of arson, among other offenses, has been by force of this statute extended over Indian reservations; and that an Indian committing the crime of arson within the limits of an Indian reservation, shall be amenable to the same punishment, and tried by the same courts as though the crime had been committed within a ,fort or any other place exclusively under the jurisdiction of the United States. It has been further held that no jurisdiction exists to try or punish an Indian for an offense committed upon the reservation, which is not enumerated in this statute of 1885.

U. S. v. King (D. C.) 81 Fed. 625; U. S. v. Logan (C. C.) 105 Fed. 240.

It will be observed that the Act of 1885 creates no new offense and imposes no new punishment. It does not define the crime, but simply adopts the common-law term "arson." So far as this case is concerned the act would be wholly inoperative in the absence of some other statute of the United States imposing a specific penalty upon the crime of arson when committed within territory exclusively within the jurisdiction of the United States. In other words, the statute leaves us to look elsewhere for the definition of the term "arson," and elsewhere for the punishment. The term "arson" has a definite, fixed meaning at the common law. The crime of arson has been materially enlarged and subdivided by the legislation of the several states, and the burning of other structures than dwelling houses has been made punishable by federal statute, of which section 5386 is an example. Section 5386 imposes a penalty for the malicious burning of "any arsenal, armory, magazine, rope-walk, ship-house, warehouse, block-house, barrack, storehouse, barn, or stable not parcel of a dwelling house, or any other building not mentioned in section 5385," etc. It is on the strength of this section that the defendants are charged with burning "a certain building." It is conceded that it would not be arson at the common-law to burn the structures enumerated in section 5386.

If we now turn to section 5385, it will be apparent that it re-enacts by apt language, the common-law crime of arson, because it provides punishment for willfully and maliciously burning any dwelling house or store, barn, stable, or other building, parcel of any dwelling, or mansion house, which is situate within any fort, dockyard, navy yard, arsenal, armory, or magazine, the site whereof is under the jurisdiction of the United States. The contention of the government is that when Congress employed the term "arson" in the act of 1885, it had in mind and intended to include the malicious burning which is penalized by section 5386, as well as the technical common-law crime. It is hardly conceivable that Congress would have contented itself with the employment of the technical term "arson," having a well-understood significance in law, if it had intended to include all statutory offenses of kindred nature.

The rule seems to be well settled that when Congress by statute refers to or adopts a common-law offense, without further definition, the common-law definition must obtain. Re Greene (C. C.) 52 Fed. 104, 111. In 1790 Congress made the crime of manslaughter on the high seas punishable by fine and imprisonment. The act did not define the crime otherwise than by the employment of the common-law term. It was held that the courts were thus remitted to the common-law for a definition. U. S. v. Armstrong, 2 Curt. 451, Fed. Cas. No. 14,467. It will be further observed that the Supreme Court in the Kagama Case, supra, in discussing the act of 1885, twice refer to the offenses enumerated therein as "common-law crimes." It is inconceivable that Congress used the common-law term intending thereby to cover another distinct and different offense. The statutory offense created by section 5386 is so radically different that were an indictment framed under it, proof of arson

would amount to a variance. It is not the case of a higher and lower offense, one of which is included within the other, but of two different and distinct offenses. State v. Atkinson, 88 Wis. 1, 58 N. W. 1034.

Therefore I am persuaded that Congress meant by this enactment exactly what it said, nothing more and nothing less. It had in contemplation the well-known common-law offense. It intended that we should look to the common law for the definition, and should look to the federal statutes theretofore enacted for the penalty. This penalty is found in section 5385 which, as we have seen, aptly and accurately describes the common-law crime of arson committed upon the property of the United States and in a locus within the exclusive jurisdiction of the federal government. The effect of the enactment of 1885 was therefore to practically enlarge the fort or arsenal so as to take in the Indian reservation, and thus enlarge the territory so within the exclusive jurisdiction of the United States, and put Indians resident thereon precisely upon the same footing as any other person within such exclusive territory as so enlarged. This construction makes the legislation of Congress coherent and consistent.

The question then arises whether the indictment charges the crime of arson as known at the common law. It is elementary that at the common law the gist of the offense of arson lay in the malicious burning of a house or dwelling of another. It was not an offense against property, but against human life and safety. It was intended to protect the habitation of man. For obvious reasons it was not arson at the common law to burn a schoolhouse or any other building not used as a dwelling place. The language of the indictment fails to ascribe to the building alleged to have been burned by the defendants, this essential characteristic of the common-law crime. For aught that appears on the face of the indictment this building, also defined as a "training school," may not have been the dwelling place of any human being, and may not have been situated so near to a house as to come within the mischief and definition of arson. The learned attorneys for the government frankly conceded that the indictment was insufficient to charge the crime of arson at the common law. If, as was argued at the bar, this "training school" was used as a home, a dwelling place for pupils, and the abiding place of officers, teachers, and employés, it may be worthy of consideration whether the malicious burning of such a structure so employed would not constitute arson under the strict rules of the common law; and if so, then upon conviction, the defendants might by virtue of the enactment of 1885 be punished according to the terms and provisions of section 5385. But it is not our province to pronounce upon that question at this time. The indictment failing to charge the essential ingredients of the common-law crime of arson is not supported by any statute, to which the attention of this court has been called, which is in force within the limits of an Indian reservation, under which the malicious burning by an Indian of a building other than a dwelling house or place of abode can be punished.

For these reasons the motion to quash is granted, and the defendants are discharged.