UNITED STATES v. BRANDENBURG.

No. 8124.

Circuit Court of Appeals, Third Circuit.

Reargued Jan. 3, 1944.

Decided Sept. 6, 1944.

Frederic M. P. Pearse, of Newark, N. J. (Samuel L. Hirschberg, of West New York, N.J., on the brief), for appellant.

Louis B. Schwartz, of Washington, D. C. (Thorn Lord, U. S. Atty., and Richard J. Hughes, Asst. U. S. Atty., both of Trenton, N. J., and Sheldon E. Bernstein and David Reich, Attys., Department of Justice, both of Washington, D. C., and Charles M. Phillips, U. S. Atty., of Trenton, N. J., on the brief), for appellee.

Before BIGGS, MARIS, JONES, GOODRICH, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The defendant, Leopold ·William August Brandenburg, Jr., a physician, was convicted of misprision of felony.[1] The indictment charged that between May 28 and September 1, 1941, at Union City in the State of New Jersey, having knowledge of the actual commission of a felony ᴄognizable by the courts of the United States, he wilfully and unlawfully concealed the commission of this felony and did not disclose and make it known to any person in civil authority under the United States. The felony, the commission of which it is charged that Brandenburg concealed, was the travel in interstate commerce of one Robert James Pitts from North Carolina to New Jersey with the intent to avoid prosecution by the State of North Carolina

[1] Section 146 of the Criminal Code, R. S. § 5390, 18 U.S.C.A. § 251, creating the federal offense of misprision of felony, provides:

"Whoever, having knowledge of the actual commission of the crime of murder or other felony cognizable by the courts of the United States, conceals and does not as soon as may be disclose and make known the same to some one of the judges or other persons in civil or military authority under the United States, shall be fined not more than $500, or imprisoned not more than three years, or both."

for "two burglaries" committed by him on May 16, 1941 in North Carolina.[2] The defendant was tried, was convicted and has appealed.

The facts disclosed by the record are as follows. On May 16, 1941, at about one o'clock in the morning Pitts and an accomplice broke into a three-story building used as a storehouse by C. A. Lowe & Sons, a wholesale grocery house in North Wilkesboro, North Carolina. They intended to blow open the safe with dynamite which they carried into the warehouse with them. The evidence shows that Pitts used an iron bar to break the combination lock in order that a charge of dynamite might be put into an opening in the walls of the safe. When the lock finally had been removed Pitts discovered that it had not broken properly with the spindle and the dynamite charge could not be used. Pitts and his accomplice then stole some goods and fled from the premises. Later in the morning Pitts and his companion broke into a gasoline station and stole tires. We are not concerned with the last mentioned offense since there is no substantial evidence that Brandenburg knew that Pitts had committed it. A few days later Pitts and his confederate visited Charlotte, North Carolina. Thereafter Pitts went to Hickory, North Carolina. He stayed there about a week and then traveled to Camden, New Jersey, by train. From Camden he went to Union City, New Jersey.

Pitts had just been released from Alcatraz. While he was in that prison he had a conversation with one Ludwig Schmidt who told him of the defendant. On arriving in Union City, Pitts went to see Brandenburg. Pitts testified that he had with him a newspaper clipping from the Charlotte (North Carolina) Observer describing his crime as burglary and indicating that he was sought for prosecution.[3] Pitts testified that he showed this news-

---

[2] The Act of May 18, 1934, c. 302, 48 Stat. 782, 18 U.S.C.A. § 408e, commonly known as the Fugitive Felon Act, provides:

"It shall be unlawful for any person to move or travel in interstate or foreign commerce from any State * * * with intent either (1) to avoid prosecution for murder, kidnaping, burglary, robbery, mayhem, rape, assault with a dangerous weapon, or extortion accompanied by threats of violence, or attempt to commit any of the foregoing, under the laws of the place from which he flees, or (2) to avoid giving testimony in any criminal proceedings in such place in which the commission of a felony is charged. Any person who violates the provision of this section shall, upon conviction thereof, be punished by a fine of not more than $5,000 or by imprisonment for not longer than five years, or by both such fine and imprisonment. Violations of this section may be prosecuted only in the Federal judicial district in which the original crime was alleged to have been committed."

Section 335 of the Criminal Code, 18 U.S.C.A. § 541 provides: "All offenses which may be punished by death or imprisonment for a term exceeding one year shall be deemed felonies. * * *"

The indictment in the case at bar charges that the defendant, Brandenburg, "* * * * well knew that * * * Pitts, on * * * May 16, 1941 * * * had unlawfully * * * travelled * * * in interstate commerce from the State of North Carolina * * * to and into the District of New Jersey, with intent to avoid prosecution by the * * * State of North Carolina for two certain burglaries committed by * * * Pitts * * * in * * * the State of North Carolina [and] did wilfully and unlawfully and feloniously conceal the commission of the aforesaid offense against the United States, and did not as soon as he might have, disclose and make known the same to any of the Judges or any other person in Civil authority of the United States, * * * *."

[3] The newspaper article in part was as follows:

"Caught in Net. The Charlotte Police Department scored again yesterday with the arrest of two men and a girl and the quick implication of the three in a burglary and attempted safecracking at North Wilkesboro last Friday * * * still sought is Robert Pitts of Charlotte * * *.

"Three Accused in Burglaries

* * * * * * *

"The three, North Wilkesboro Police charge, are implicated with Hubert Baker * * * and Pitts, * * * * in the burglary of C. A. Love [sic] & Sons at North Wilkesboro last Friday night.

"* * * Found in Wilson's car when the two men and the girl were nabbed on South Church Street, said Chief Littlejohn, were two cases of cigarettes addressed to the Lowe store, and also a quantity of powdered dynamite and dynamite caps. An attempt to dynamite the safe at the Lowe store, it was pointed out, had been unsuccessful, but

paper to Brandenburg. Pitts had a large scar on his right cheek. The defendant arranged for an operation for Pitts at a local hospital. The scar was reduced in area. Later, the defendant himself operated on Pitts' fingers and removed most of his finger prints. This operation was performed at the defendant's home. During Pitts' stay in New Jersey he was lodged at the hospital, at the defendant's house or with friends of the defendant. There can be no doubt that the evidence supports the conclusion that Brandenburg knew that Pitts had broken into the Lowe store and had attempted to dynamite the safe and that he knew also that Pitts had fled from North Carolina to avoid prosecution for this crime.

■ The purpose of the Fugitive Felon Act was stated by Congressman Sumners, Chairman of the Committee on the Judiciary of the House of Representatives, quoting the comments of the Attorney General of the United States on the bill as follows: "One of the most difficult problems which local law-enforcement agencies have to deal with today is the ease with which criminals are able to flee from the State to avoid prosecution * * *. The above bill is considered the most satisfactory solution of this problem, which the States have never been able to solve effectively. This bill will not prevent the States from obtaining extradition of roving criminals, but the complicated process of extradition has proved to be very inefficient. The ability of Federal officers to follow a

criminal from one State to any other State or States, as provided in the above bill, should furnish the desired relief from this class of law evaders. * * * " Report No. 1458 of the House Committee on the Judiciary, to accompany S. 2253, May 3, 1934, 73rd Congress, 2nd Session. The same report shows that the word "burglary" and the other specific offenses named in the Act were substituted for the words "a felony" used in the original bill. The general purpose of the Act was to assist in the enforcement of state laws. Compare Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640.

■ The appellee takes the position, citing Benson v. McMahon, 127 U.S. 457, 464, 8 S.Ct. 1240, 32 L.Ed. 234,[4] that Congress could not have had the common law offenses in mind when it named specific crimes in the Fugitive Felon Act. The appellant contends to the contrary. This court stated in United States v. Patton, 3 Cir., 120 F.2d 73, 75, "It is * * * well settled that when a federal statute uses a term known to the common law to designate a common law offense and does not define that term, courts called upon to construe it should apply the common law meaning," citing United States v. Palmer, 16 U.S. 610, 3 Wheat. 610, 4 L.Ed. 471; United States v. Armstrong, Fed.Cas.No.14,467; United States v. Outerbridge, Fed.Cas.No. 15,978; United States v. Coppersmith, C. C., 4 F. 198; United States v. Clark, D.C., 46 F. 633.[5] If the appellant is correct in his contention, the principle which he as-

the burglars succeeded in damaging it. * * *"

[4] In the cited case Benson was charged with being guilty of forgery (the forgery of tickets for a concert to be given by Adelina Patti in Mexico City), in Mexico. The legality of Benson's detention was tested by habeas corpus. The treaty between the United States and Mexico authorized extradition for the crime of "forgery."

A defense asserted by Benson was that the tickets were not forgeries because they were printed and not written. This defense was based on the definition of forgery of the common law of England which, Benson claimed, included only fraudulent documents in writing. The court held that the Mexican authorities could not have had common law forgery in mind and that it was an offense against the Mexican law, "la falsificacion," that Benson was held to answer. The writ was discharged.

Mr. Justice Miller stated, however, 127 U.S. 466, 8 S.Ct. 1244, 32 L.Ed. 234, "Another circumstance in connection with this matter is that this court has frequently decided that there are no common-law crimes of the United States. In very few of the states were there common-law crimes remaining as subjects of punishment at the time when this treaty was made. Almost every state in the Union, has recast her criminal law by the enactment of statutes in such a mode that the common law is now only appealed to as an aid in the definition of crimes."

[5] See also Harrison v. United States, 163 U.S. 140, 142, 16 S.Ct. 961, 41 L. Ed. 104; United States v. Carll, 105 U. S. 611, 613, 26 L.Ed. 1135; United States v. Smith, 5 Wheat. 153, 160, 5 L.Ed. 57; Levinson v. United States, 6 Cir., 47 F.2d 470, 471; United States v. Cardish, D.C., 143 F. 640, 642, and In re Greene, C.C., 52 F. 104, 111.

serts would be dispositive of the case at bar. The issue turns on the use of the clause " * * * under the laws of the place from which he flees, * * *". Does it modify the offenses named in the Fugitive Felon Act or does it modify the word "prosecution"? If the former, the offense of "burglary" must be defined under the law of the State from which the fugitive flees. If the latter, it is clear that the "burglary" denominated in the Act could be burglary only at common law since the offense is otherwise undefined in the statute. See the authorities just cited.

 Cogent arguments can be made in support of both contentions. We shall discuss some of them. The congressional report from which we have quoted shows that the aim of the Act was to impose penalties on a "class of law evaders," viz., "roving criminals" who would be subject to extradition. But seven States do not denominate the offense of burglary as "burglary."[6] New Jersey is an example. If an offender broke into the dwelling house of another in New Jersey in the nighttime with the intent to commit a felony therein and thereby committed "burglary" as that offense is defined at the common law,[7] he would not be guilty of a crime designated as "burglary" under the law of New Jersey but would be guilty of a "high misdemeanor." If the phrase "under the laws of the place from which he flees" is deemed to modify the word "burglary" instead of the word "prosecution," an offender, who had committed in New Jersey (or in any of the other six States indicated in footnote 6) acts which would constitute common law burglary, would not be within the purview of the Fugitive Felon Act upon fleeing the State, even though he entered that "class of law evaders" which the congressional report refers to as "roving criminals" subject to extradition. A criminal, therefore, would escape the penalty of the Act simply because he had committed his offense in a State which did not make use of the word "burglary" in its statute. We think that such a result was not intended by Congress.

If the clause under consideration is deemed to modify the word "burglary," it may be contended also that any offense which any State denominates by the name of one of the crimes which appear in the Fugitive Felon Act is cognizable under that Act if the offender flees from the State. It would follow that by calling a traffic offense "burglary" a State could bring the fleeing offender within the purview of the federal statute. While it may be urged that the Fourteenth Amendment would prohibit a State from punishing a traffic offense as "burglary," the Fugitive Felon Act by its terms would embrace an offender fleeing to escape prosecution for such a crime. We cannot believe that this was the intention of Congress.

 The appellee argues that the clause under discussion must modify the crimes named in the statute and insists that to interpret it as modifying the word "prosecution" is to lift the clause out of its context and to do violence to the fundamental grammatical rule that a phrase such as that under consideration modifies the nearest antecedent noun. This argument does not help the appellee for a clause modi-

---

As to Courts, of the States applying this doctrine to state statutes see 22 C. J.S. Criminal Law, § 21, note 32.

6 See: Burglary
Florida Stats. Ann........ Sec. 810.01
Massachusetts Ann. Laws ch. 266, Sec. 14
New Hampshire Rev. Laws
 1942 ..................... c. 453, Sec. 1
Page's Ohio Gen. Code......Vol. 10, Sec. 12441
New Jersey Stats. Ann..... Title 2:115-1
Vermont Pub. Laws 1933... Sec. 8436
Wisconsin Stats. 1943...... Sec. 343.09

7 Common law burglary may be defined as follows: "The breaking and entering the house of another with intent to commit a felony therein, whether the felony be actually committed or not." See 1 Bouv. Law Dict., Rawle's Third Revision, p. 404, and the authorities there cited.

Webster's New International Diction-

ary, 2nd Edition, defines "burglary" as: "1. Law. Breaking and entering the dwelling house of another, in the nighttime, with intent to commit a felony therein, whether the felonious purpose be accomplished or not. At common law it was not night as respects burglary so long as there was light enough to discern a man's face; but in England night for this purpose is fixed by statute as from nine o'clock P.M. to six o'clock A.M. In many States of the United States the definition of the crime has been variously modified, or a statutory burglary has been created in addition to that of the common law, to cover such offenses committed by day, or the like entering of shops, factories, warehouses, etc.; and various degrees of the crime have been created."

fies that antecedent which the draftsman intended it to modify. The determination of the question therefore turns on ascertaining the intention of Congress in this regard. As a matter of the use of language the phrase "under the laws of the place from which he flees" more aptly modifies the word "prosecution" than the word "burglary," because in legal parlance prosecutions are conducted *under* the law of a State or a place, while crimes are generally referred to as having been committed *in violation of the law* of a State or place. The congressional report makes it clear that Congress desired to aid the States in preventing violators of state laws from avoiding prosecutions by the States. It is also argued by the appellee that if the clause under consideration is not deemed to modify the word "burglary" it becomes mere surplusage. This argument is not sound, however, for an offender might flee to avoid prosecution from any State or place.

■ The appellee contends that if the clause under discussion is employed to modify the word "prosecution," it would not be necessary for the fugitive to have committed any crime at all and that this could not be the result intended by Congress. For example, a psychotic who imagined that he had committed a burglary would be within the purview of the Fugitive Felon Act if he fled to avoid prosecution for his imaginary crime. The venue provisions of the Act lend some support to this view for they provide that a violation of the Act may be prosecuted only in the federal judicial district "in which the original crime was alleged to have been committed," and not where the original crime was committed. We think, however, that the reason that this language was employed in the venue provi-

sions of the Act appears clearly in the footnote below.[8] We entertain no doubt from the words used by Senator Robinson (footnote 8, supra) that Congress intended to prosecute a fugitive who was fleeing to escape prosecution for an actual crime.

■ It is our duty to reconcile the provisions of the Act and to hold the Statute constitutional if its provisions can be construed so as to afford an adequate and certain definition of the crime which it purports to create. Cf. Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed 888, and United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045. We think these ends may be accomplished as follows. We conclude that it was the manifest intention of Congress to cause the Act to have universal application throughout the States since this is the purpose expressed in the congressional report. Restricting ourselves solely to the crime of "burglary" named in the Fugitive Felon Act, we say that there is no State in which acts constituting burglary as defined at common law would not be within the purview of an applicable criminal statute. In other words there is no State in which the offense of breaking into the dwelling house of another in the nighttime with the intent to commit a felony therein would not be a crime cognizable under an appropriate state statute.[9] Each State has created numerous statutory offenses which include such crimes as breaking into a dwelling house, a warehouse, a shop, an office, a freight car, or even a boat with the intent to commit a felony therein. These are variously denominated as burglaries, felonies, or high misdemeanors, and in our opinion were not intended by Congress to fall within the crime of "burglary" named in the

---

[8] The venue provision had read: "Violations of this Act may be prosecuted only in the Federal judicial district in which the crime was committed. Senator Robinson of Arkansas in offering the amendment which is now embodied in the law said, "I think * * * [the venue provision] should read 'in which the original crime was alleged to have been committed' since otherwise it would be necessary to prove that a crime had been committed before a prosecution could be commenced under the statute." 78 Cong.Rec. p. 5737, 73rd Cong., 2nd Sess.

[9] See as typical:

Idaho Code ..........1932, Section 17-3401 et seq.
Mississippi Code......1942, Title 11, Section 2036 et seq.
Massachusetts Annotated Laws ............ Chapter 266, Section 14.
California, Deering's Penal Code..........1941, Section 459 et seq.
West Virginia Code...1943, Section 5952 et seq.
Delaware, Revised Code ................1935, Section 5190 et seq.

Fugitive Felon Act.[10] If we boil the Act down and leave in it only those words which create and define the crime, it will read, "It shall be unlawful for any person to move in interstate commerce with intent to avoid prosecution for burglary under the law of the State from which he flees." The statute thus simplified without rearranging any of its component parts, makes good sense, meets the test which we have imposed and provides that if a person who has committed acts which would constitute the crime of burglary at common law flees from a State to avoid prosecution under the law of that State, he has violated the Fugitive Felon Act. The crime which it creates is defined with sufficient certainty to meet the requirements of the Fifth Amendment. Our conclusion is that the qualifying clause must be deemed to modify the word "prosecution" and that the crime of "burglary" referred to in the Act is burglary as defined at common law.

It is obvious that Pitts fled from North Carolina to escape prosecution for the crimes which he had committed. Section 4232 of the North Carolina Code[11] (Consolidated Statutes of 1939) provides that: "There shall be two degrees in the crime of burglary as defined at the common law. If the crime be committed in a dwelling-house, or in a room used as a sleeping apartment in any building, and any person is in the actual occupation of any part of said dwelling-house or sleeping apartment at the time of the commission of such crime, it shall be burglary in the first degree. If such crime be committed in a dwelling house or sleeping apartment not actually occupied by any one at the time of the commission of the crime, or if it be committed in any house within the curtilage of a dwelling-house or in any building not a dwelling-house, but in which is a room used as a sleeping apartment and not actually occupied as such at the time of the commission of the crime, it shall be burglary in the second degree."

■ We conclude that Pitts did not commit burglary in either the first or the second degree as defined by Section 4232 of the North Carolina Code. While evidence was offered to show that the store of C. A. Lowe & Sons contained a room in which there was a cot occasionally occupied at night by a member of the firm serving as a guard, it is clear that this cannot be considered to be a sleeping apartment within in the terms of the statute. The room was unoccupied on the night of the crime. The Supreme Court of North Carolina has held that the sleeping apartment referred to in the statute must be one in which a person regularly sleeps. State v. Foster, 129 N.C. 704, 40 S.E. 209. The offense which Pitts committed bears little resemblance to the crime of burglary as defined at common law.

■ What was the crime which Pitts committed? Section 4237(a) of the North Carolina Code[12] (Consolidated Statutes of 1939) provides as follows: "Burglary with explosives.—Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by use of nitro-glycerine, dynamite, gunpowder, or by any other explosive, or acetylene torch, shall be deemed guilty of burglary with explosives." It is upon this statute that the United States rests this phase of its case. Was Pitts guilty of burglary with explosives? From his own testimony it is clear that he broke into the warehouse bringing explosives with him with the intent of using them to blow open the safe. By removing the dial on the safe Pitts committed an affirmative act sufficient to demonstrate his intent within the meaning of the statute. There was sufficient evidence from which a jury could have found that Pitts was guilty of burglary with explosives committed in North Carolina. This was his crime.

---

10 For the crimes referred to see the following state statutes which are typical:

Delaware, Revised Code....1935, Section 5193.
New Jersey Statutes Annotated ........................... Title 2:115-2.
Arkansas, Digest ...........1937, Section 3058.
Kentucky, Carroll's Stats. Annotated ................1936, Section 1159.
Pennsylvania, Purdon's Stats. Annotated.............. Title 18, Section 3042.

11 This Act was passed in 1889. See Laws of 1889, c. 434, Sec. 1.

12 This Act was passed in 1921. See Laws of 1921, ch. 5. Obviously the crimes of burglary named in Section 4232 of the North Carolina Code, and called degrees of the crime of burglary as defined at the common law, are separate and distinct from "burglary with explosives" created in Section 4237 (a) of the North Carolina Code.

The crime of "burglary with explosives" was unknown to the common law. It follows that when Pitts fled from North Carolina to avoid prosecution for "burglary with explosives" he did not commit an offense within the purview of the Fugitive Felon Act. From this we must conclude that Brandenburg did not commit the crime of misprision of felony within the purview of Section 146 of the Criminal Code.

The judgment of conviction is reversed.