**The UNITED STATES of America, Plaintiff,**

v.

**Louis James KELLY, Defendant.**

**Cr. A. No. 14981.**

United States District Court
D. Colorado.

Dec. 13, 1956.

firearms by one who has been convicted of a crime of violence or who is a fugitive from justice. Upon the defendant's plea of not guilty, trial was had to a jury resulting in a verdict of guilty. The matter now rests upon defendant's renewal of his Motion for Judgment of Acquittal.

By his motion, the defendant alleges: a) the Government failed to establish the *corpus delicti*, independent of defendant's admissions, b) and c) the Government failed to prove that the defendant had been convicted of a crime of violence, and the Court erred in instructing the jury that second degree burglary as defined by the pertinent Missouri statutes is a crime of violence, and d) that the construction given 15 U.S.C.A. §§ 901(6) and 902(e) by the Court deprives the defendant of the due process of law guaranteed him by the Fifth Amendment to the United States Constitution.

The evidence adduced at the trial discloses the following facts material here:

On February 13, 1950, in the Circuit Court of Ray County, Missouri, the defendant plead guilty to and was sentenced for the commission of the crime of burglary in the second degree, together with another crime not here material; that on May 21, 1956, the defendant and another were accosted in an automobile bearing Missouri license plates in Pueblo, Colorado, by certain police officers of that city acting pursuant to the request of law enforcement officers of an adjoining county who suspicioned the occupants of the automobile to be connected with a burglary unrelated to this matter; that a search of the automobile disclosed the two firearms described in the information which were subsequently introduced in evidence at the trial of the defendant; that the defendant having been taken into custody by law enforcement officers of Otero County, Colorado, related to them that he owned one of the weapons, having purchased the same from an individual in Kansas City, Missouri, and had transported the same in his automobile from that city into Colorado; that thereafter the defendant was interrogated by an Investigator for the Alcohol

Donald E. Kelley, U. S. Atty. for the Dist. of Colorado, and John S. Pfeiffer, Asst. U. S. Atty., Denver, Colo., for the United States.

Montfort, Wilson & Deikman, James W. Wilson, Denver, Colo., for defendant.

KNOUS, Chief Judge.

An information was filed against the defendant charging him with violating 15 U.S.C.A. § 902(e), which statute prohibits the interstate transportation of

and Tobacco Tax Division, Department of the Treasury, on at least two different occasions, during which he once related to the Investigator that he had purchased the weapon from a named individual in Kansas City, Missouri, and had by a circuitous route transported the same in his automobile into Colorado and also that he had been convicted of burglary in Missouri, and on another occasion he related to the Investigator that he had found the weapon alongside a highway within Colorado and had transported the same in his automobile only within the State of Colorado. When the individual in Kansas City, Missouri, named by the defendant as the person from whom the gun was purchased, was questioned by federal officers, he denied any knowledge of the transaction.

Upon the foregoing state of facts the defendant first contends that the *corpus delicti* of the crime was not proved by the Government. The contention is based upon the rule that an uncorroborated admission standing alone is not sufficient evidence of *corpus delicti*.

While the denomination by counsel for both the defendant and the Government of the statements made by the defendant to the Investigator as admissions rather than a composite confession is open to some doubt, the Court does not pause to designate such statements as one or the other, for the rule contended by the defendant, if applicable here at all, is applicable to both. Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101. The decision of the United States Supreme Court in Opper v. United States, supra, sets forth the rule of the requirement of independent evidence to corroborate an admission. After discussing the divergent views of the federal courts on the question, that Court stated at page 93 of 348 U.S., at page 164 of 75 S.Ct.:

"Whether the differences in quantum and type of independent proof are in principle or of expression is difficult to determine. Each case has its own facts admitted and its own corroborative evidence, which leads to patent individualization of the opinions. However, we think the better rule to be that the corroborative evidence need not be sufficient, independent of th statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. Smith v. United States, [post] 348 U.S. 147, 75 S.Ct. 194 [99 L.Ed. 192]. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt."

Here, as in Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192, which decision dealt with a violation of § 145 of the Internal Revenue Code, 26 U.S.C.A. § 145, "there is no tangible injury which can be isolated as a *corpus delicti*. As to this crime, it cannot be shown that the crime has been committed without identifying the accused." 348 U.S. at page 154, 75 S.Ct. at page 198. However, leaving aside the question of *corpus delicti*, the interstate transportation of the weapon is certainly an element of the crime, and if the defendant's admission is to establish this element, the admission must be made trustworthy by independent corroborative evidence sufficient to justify a jury inference of the truth of the facts contained in the admission. Cf. Braswell v. United States, 10 Cir., 1955, 224 F.2d 706, certiorari denied 350 U.S. 845, 76 S.Ct. 86.

In the instant action, the Government by evidence independent of any admission established that the defendant had been convicted of a crime of violence, assuming, for the purpose of this question

that Missouri burglary in the second degree is such a crime. The admissions of the defendant, if trustworthy, established the interstate transportation of the weapon. The question then, is whether there was sufficient independent evidence of the interstate transportation to corroborate the admission thereof and thereby make it trustworthy.

Certainly, the required independent evidence may be of a circumstantial nature from which the jury may draw reasonable inferences. The defendant with a companion was accosted while driving on U. S. Highway 50 in Pueblo, Colorado. Pueblo is a south central city in Colorado, being situate some 150 miles west of the Colorado-Kansas border. U. S. Highway 50, on its east-west course traverses Pueblo, constituting the principal and most direct route to Pueblo from south central Kansas, and, further east, from Kansas City, Missouri.

The automobile occupied by the defendant and his companion carried 1956 Missouri license plates. A search of the automobile at the time of apprehension in Pueblo, disclosed the weapon of which defendant admitted ownership secreted under the driver's seat.

Finally, the independent evidence of the crime of violence committed by the defendant showed it to have been committed in Missouri with subsequent incarceration in Missouri.

■ It appears clear to the Court that from these independent facts taken altogether it cannot be said that a jury could not infer therefrom the truth of defendant's admissions that he came into possession of the weapon in Kansas City, Missouri, and transported the same in his automobile from Kansas City to Pueblo, Colorado, after a sojourn in and out of Kansas, Oklahoma, and Texas. The fact that the Government was not able to verify the statement that the weapon was purchased from a named individual in Kansas City, Missouri, only shows the defendant was successful in concealing the source of his acquisition and does not overcome the reasonable inference supporting his admission that from some source the weapon was obtained in Kansas City. Little if any significance can be attached to the defendant's explanation, made subsequent to the advice given him by a federal agent that a crime is committed by one who has theretofore been convicted of a crime of violence and transports a firearm across a state line, of how he came into possession of the weapon. While within the realm of possibility, finding valuable firearms in a suitcase conveniently situated a few miles within a state border along a heavily traveled thoroughfare approaches the incredible.

Proceeding, then, to the question raised by defendant's second, third and fourth grounds for judgment of acquittal:

As used in 15 U.S.C.A. § 902(e), the term " 'crime of violence' " is defined by 15 U.S.C.A. § 901(6) as meaning

"murder, manslaughter, rape, mayhem, kidnapping, robbery, burglary, housebreaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year."

It is contended by the defendant that the term "burglary" as used in the statute means burglary at common law. This, it is alleged, follows from the general principle of statutory construction set forth in 50 Am.Jur., Statutes, § 279, pg. 266, as follows:

"It is a familiar rule of construction that when a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended * * *"

See also United States v. Palmer, 1818, 3 Wheat. 610, 16 U.S. 610, 4 L.Ed. 471; Hite v. United States, 10 Cir., 1948, 168 F.2d 973; United States v. Brandenburg, 3 Cir., 1944, 144 F.2d 656, 154 A.L.R. 1160.

In 1 Hawk P.C., Curw.Ed., p. 129, as found in 2 Bishop on Criminal Law, 9th ed., § 91, p. 69, it is said:

"Burglary is a felony at the common law, in breaking and entering the mansion-house of another, or (as some say), the walls or gates of a walled town, in the night, to the intent to commit some felony within the same, whether the felonious intent be executed or not."

Burglary in the second degree in Missouri has been defined as an offense which

"may be committed by the breaking and entering of any building, the breaking and entering of which is not declared to be burglary in the first degree, in which valuable chattels are kept or deposited, with the intent to steal or commit any crime therein. Section 560.070 RSMo 1949, V.A.M.S." State v. Ruffin, Mo. 1956, 286 S.W.2d 743, 746.

The offense is punishable by imprisonment for a term of not less than two years nor more than ten. Section 560.-095 RSMo 1949, V.A.M.S. By Section 560.045 RSMo 1949, V.A.M.S., a dwelling house may be the subject of second degree burglary, if the act is not done in such manner as to constitute burglary in the first degree, 560.040 RSMo 1949, V.A.M.S. However, it is not an element of second degree burglary that the act be committed in the nighttime. Thus, at least insofar as the Government proved the instant second degree burglary offense, it is not the equivalent of common law burglary.

In support of its contention, the defendant relies heavily upon United States v. Brandenburg, supra. There it was held that the term "burglary" as used in the Fugitive Felon Act, 18 U.S. C.A. § 408(e), prior to amendment, meant burglary at the common law and not as defined by the statute of the state from which the felon fled to escape prosecution.

The Court pointed out seven states which by statute prohibit an act of "burglary" but which do not define the crime as "burglary." Thus, if the crime of burglary meant a crime designated as such under the state law, one could commit the act in any of the seven states and not be subject to the federal statute; and, on the other hand, a state could designate a traffic offense as "burglary" and thus bring such an offense under the federal statute. Finally, it was said that all states make common law burglary a crime, whatever the label attached to the act.

Reliance is also had upon Jerome v. United States, 1943, 318 U.S. 101, 63 S. Ct. 483, 87 L.Ed. 640, wherein the Supreme Court after considering the legislative history and congressional intent of the Bank Robbery Act, 12 U.S.C.A. § 588(b), held that the term "felony" as used therein, did not incorporate state law. In the course of its opinion, the Court stated at 318 U.S. 104, 63 S.Ct. 483, 485:

"At times it has been inferred from the nature of the problem with which Congress was dealing that the application of a federal statute should be dependent on state law. Examples under federal revenue acts are common. * * * But we must generally assume, in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent on state law. That assumption is based on the fact that the application of federal legislation is nationwide. * * and at times on the fact that the federal program would be impaired if state law were to control. * * * "

The term "felony", was not therein given its common law meaning, but was interpreted to mean only federal felonies affecting the protected banks. 318 U.S. 108, footnote 6, 63 S.Ct. 487.

In arriving at a determination of this question, it is well to keep in mind certain other principles of statutory construction. Some of these principles applicable here may be taken from 50 Am.

Jur., Statutes, as all are amply supported by case law.

Section 303 thereof, at page 283, reads as follows:

"The purpose for which a statute is enacted is of primary importance in the interpretation thereof. Indeed, a statute is often regarded as speaking as plainly by means of the purpose which underlies it as in any other manner. In any event, in the interpretation of a statute of doubtful meaning, it is proper to take into consideration its purpose or object, or the aim, design, motive, or end in view, or the aspirations intended to be efficiently embodied in the enactment. The construction of the statute should be made with reference to the purpose of the statute, or in the light thereof, and in harmony and conformity therewith, in order to aid, advance, promote, subserve, support, and effectuate such aim, design, motive, end, aspirations, or object."

Section 377 thereof, at page 385, reads as follows:

"A statute subject to interpretation is presumed not to have been intended to produce absurd consequences, but to have the most reasonable operation that its language permits, and it is a general rule that where a statute is ambiguous in terms and fairly susceptible of two constructions, the unreasonableness or absurdity which may follow one construction or the other may properly be considered * * *" [Such construction is used with caution to prevent the susbstitution of judge-made law for the statute.]

Section 411 thereof, at page 436, reads as follows:

"The rule that a penal statute must be strictly construed does not prevent the courts from calling to their aid all the other rules of construction and giving each its appropriate scope * * *"

And Section 421 thereof, at page 442, reads as follows:

"The rule of strict construction of a penal law does not prevent the application of the rule of a reasonable or sensible, and fair or just construction of the statute as a whole, in order to avoid an absurdity which the legislature ought not to be presumed to have intended * * *"

In Cases v. United States, 1 Cir., 1942, 131 F.2d 916, 921, certiorari denied 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718, the court set forth the purpose of the Act upon which the information here is grounded, in the following manner:

" * * * In the Act Congress sought to protect the public by preventing the transportation and possession of firearms and ammunition by those who, by their past conduct, had demonstrated their unfitness to be entrusted with such dangerous instrumentalities * * *."

See also Braswell v. United States, 10 Cir., 224 F.2d 706, 710, supra; United States v. Platt, D.C.Tex.1940, 31 F.Supp. 788, 790.

It would be a strange holding indeed for this Court to say that it was the intent of Congress that one having been convicted of burglary by breaking into a building other than a dwelling house at a time other than between sunset and sunrise is more fit to have in his possession a firearm than one whose nefarious activities had been limited to dwelling houses at night. Such would be the intent given by Congress if United States v. Brandenburg, supra, was followed literally in this instance, and by so doing, in the opinion of this Court, the purpose of the statute would be thwarted.

Two rather obvious examples of the absurdity attaching to this "common law" construction of the statute would be kidnapping, where, before one could be said to be unfit for the possession of firearms under the statute it would have to be shown that the victim of the kidnapping was abducted from the country

(whatever meaning "country" might be given in present day parlance), see 1 Wharton, Criminal Law, 12th ed., § 773, page 1056, and mayhem, where it would have to be shown that the maim rendered a man "less able in fighting to defend himself or annoy his adversary." Id., § 767, page 1048.

The dangers expressed in Brandenburg that a crime be designated by a state other than as the crime was actually known at common law and included in the statute in question, and the possibility of the designation by a state of a picayunish offense as one designated by the statute as a crime of violence, is not nearly so great as the attendant danger of allowing those who committed an obvious crime of violence to roam at will because the crime of violence did not carry with it the intricacies of the common law.

■ Moreover, in the opinion of the Court, on the face of the statute, Congress showed its intention that the designated crimes of violence were to take their meaning from the statute of the states where the conviction was had. Following the description of certain crimes of violence, Section 901(6) of 15 U.S.C.A. concludes by setting forth,

"or assault with intent to commit any offense punishable by imprisonment for more than one year."

Can it be said that "any offense" means "any offense at common law?" The answer has to be in the negative for the term "any offense" is limited by the minimum imprisonment meted out for the assault to commit such offense, and this must be governed by state law, for the punishment at common law for assaults with intent to commit felonies "varied according to the discretion of the court." 1 Wharton, Criminal Law, 12th ed., § 840, pg. 1126.

Finally, it may be said that the Brandenburg decision does not stand without opposition. In Cases v. United States, supra, the First Circuit Court of Appeals held in answer to a constitutional attack, that definitions of the crimes set forth in the statute should be taken from state law. In this regard, the Court said at page 924 of 131 F.2d:

"Doubtless this is true, [the fact that certain acts are designated by certain states as crimes falling within the category of crimes of violence and in other states would not be so designated] but Congress in making the classification was confronted with a practical problem which it solved in a practical way by listing crimes of violence and putting them, wherever committed, into a single category. It does not seem to us that there can be a sufficiently wide variety in the definition in the different states and territories of the crimes listed to make this classification unconstitutional. Practical uniformity is enough and Congress seems to us to have achieved it in the act under consideration. See, also, McDonald v. Massachusetts, 180 U.S. 311, 21 S. Ct. 389, 45 L.Ed. 542."

The same question was again sought to be raised in habeas corpus proceedings in Velazquez v. Hunter, 10 Cir., 1947, 159 F.2d 606, certiorari denied 330 U.S. 846, 67 S.Ct. 1084, 91 L.Ed. 1291, and it was held that the Cases decision was conclusive of the point.

The defendant also raises the question of the statute's constitutionality if the construction of applying state law to the crimes designated in the statute is adopted. No argument of the point is made in the defendant's brief. While this Court is not going to embark upon a self-propounded question and answer dissertation of any constitutional question, it may be said that if any answer is needed, it is supplied by Cases v. United States, supra.

Accordingly, in the opinion of the Court, the designated crimes of the statute are to be found in the laws of the states, and the inclusion of the crime of burglary as a crime of violence includes second degree burglary of Missouri of which the Government established the

defendant to have been convicted. Therefore, it is

Ordered and Adjudged that defendant's Motion for Judgment of Acquittal be, and the same is, hereby denied.