950 A.2d 911

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. MURRAY AIKENS AND ANTHONY BROWN,
DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 22, 2008—Decided June 30, 2008.

300

Before Judges SKILLMAN, WINKELSTEIN and LeWINN.

*Howard A. McGinn,* Deputy First Assistant Prosecutor, argued the cause for appellant (*Thomas S. Ferguson,* Warren County Prosecutor, attorney; *Dit Mosco,* Assistant Prosecutor, of counsel; *Mr. McGinn,* on the brief).

*Thomas C. Pluciennik,* Designated Counsel, argued the cause for respondent Murray Aikens (*Yvonne Smith Segars,* Public Defender, attorney; *Mr. Pluciennik,* on the brief).

*Michael A. Priarone,* Designated Counsel, argued the cause for respondent Anthony Brown (*Yvonne Smith Segars,* Public Defender, attorney; *Mr. Priarone,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The primary issue presented by this appeal is whether members of the United States Marshals Service are authorized to arrest a fugitive who they have reason to believe has fled from one state to another to avoid prosecution. We conclude that such flight constitutes a violation of the Federal Fugitive Felon Act, 18 *U.S.C.A.* § 1073, and that United States Marshals are authorized to make a warrantless arrest of a person who they have probable cause to believe has violated that Act.

I

The United States Marshals Service has established task forces around the country to pursue fugitives. These task forces consist of permanent United States Marshals and local law enforcement

officers deputized as Marshals solely for task force operations. One such task force is based in the Eastern District of Pennsylvania. According to a Department of Justice memorandum of understanding, the mission of this task force "is to seek out and arrest, in a joint coordinated manner, persons who have unexecuted state and federal warrants lodged against them."

From October 22 to October 28, 2006, the Marshals Service conducted FALCON III, a large-scale mobilization of fugitive task forces in the eastern and midwestern parts of the United States to apprehend individuals wanted on state and federal warrants. In order for the task forces to meet the objectives of FALCON III, a substantial number of local law enforcement officers were deputized as temporary special Deputy United States Marshals.

One of the fugitives targeted by the Eastern District task force as part of FALCON III was Michelle Smith, an escapee from a Pennsylvania detention center. A warrant had been issued for Smith's escape and violation of parole, and Pennsylvania parole agents received information that Smith was residing at 20 North Main Street in Phillipsburg, New Jersey.

On the morning of October 25, 2006, members of the task force, including a Deputy United States Marshal and five Pennsylvania law enforcement officers who had been deputized as special Deputy United States Marshals, went to this Phillipsburg address to arrest Smith. All wore identifying badges or jackets.

Four officers entered a vestibule inside the front door of the building, while two officers secured the outside of the building. One of the officers, Tim Hornbaker, knocked on the door and announced the presence of the federal law enforcement officers. After thirty to sixty seconds, the door opened, and Officer Hornbaker observed Smith standing next to defendants, Murray Aikens and Anthony Brown, inside the apartment. Hornbaker told Smith, "you know why we're here." Aikens then pushed Smith towards the officers. One of the officers behind Hornbaker grabbed Smith and handcuffed her.

After the officers arrested Smith, they entered the apartment to detain the other occupants. Hornbaker testified that they did so "for officer safety" until Smith was removed from the scene. He also testified that defendants appeared "real nervous" and that the man who had opened the door had stepped into an adjoining bedroom.

Hornbaker asked defendants to sit on the floor. Aikens cooperated, but Brown first tossed something that looked like a bag behind the couch. Upon seeing Brown toss the bag, Hornbaker immediately handcuffed defendants and a female who was in the kitchen.

Hornbaker then approached the bathroom because Brown had been partially in that room. Hornbaker shone his flashlight into the open toilet while standing outside the room. He discovered a bag containing a white rocky substance floating in the toilet, which he retrieved. Hornbaker also retrieved the bag tossed behind the couch. Both bags contained cocaine. At this point, a member of the task force called the Phillipsburg police, who arrived shortly thereafter. The task force then completed a protective sweep of the apartment, which revealed four other persons in the bedroom.

After the arrival of the Phillipsburg police, several occupants of the apartment were taken to Phillipsburg police headquarters. Aikens, who was the registered tenant, remained at the apartment with Lieutenant Mirenda of the Phillipsburg Police Department and executed a written consent to search the apartment. This search revealed additional drugs and drug paraphernalia.

Both defendants were indicted for numerous third- and fourth-degree drug offenses. The indictment charged that defendants entered into a conspiracy to distribute cocaine between October 1 and October 25, 2006. The indictment included three counts charging Brown with drug offenses that were apparently based on an undercover purchase of drugs from Brown by a Phillipsburg police officer on October 20, 2006. The other drug offenses were alleged to have occurred on October 25, 2006, the day of Smith's arrest and the subsequent search of the apartment at 20 North

Main Street. In addition to the drug charges, Brown was charged with escape, hindering his own apprehension and criminal mischief, based on his kicking out the window of a police car and attempting to flee after his arrest.

Defendants filed a motion to suppress all of the evidence seized in the apartment. Before the hearing on the motion, the motion judge indicated that he had doubts whether the members of the task force had jurisdiction to execute Pennsylvania arrest warrants in New Jersey. The supervisors of the task force and its members testified concerning the authorization for Smith's arrest and how the arrest and subsequent search were conducted.

However, the hearing on the motion to suppress was never completed. After scheduling a date to hear testimony by witnesses who were unavailable during the first two days of the hearing, including Lieutenant Mirenda, who had obtained Aikens's consent to search the apartment, the trial court issued a written opinion which concluded that all of the evidence obtained in the search of the apartment should be suppressed because the task force did not have authority to execute the Pennsylvania warrant for Smith's arrest in New Jersey without the assistance of New Jersey law enforcement officials. The court also concluded, as an alternative ground for suppressing the evidence, that the task force members' entry into the apartment after Smith's arrest did not constitute a valid protective sweep incident to her arrest.

The State filed a motion for reconsideration on the grounds that the trial court had granted defendants' motion to suppress without affording the State an opportunity to fully brief the issue of the United States Marshals Service's authority to arrest Smith in New Jersey or to present all evidence relevant to the validity of the search of the apartment. The court denied the motion. In rejecting the State's argument that the court should not have decided the motion to suppress without first hearing all the evidence, the court stated:

Such evidence concerns the collection of evidence following the federal raid and any statements or consents to search which may have been given by these defendants.

> The court viewed the jurisdictional issue as the primary issue in this case; the resolution of which would resolve all of the remaining issues. The remaining issues are, in this Court's opinion, collateral and inferior to the jurisdictional issue.

We granted the State's motion for leave to appeal from the order granting defendants' motion to suppress and denying the State's motion for reconsideration.

On appeal, the State argues that the United States Marshals Service task force had authority to arrest Smith in New Jersey and that the actions of the task force members after her arrest, resulting in the discovery of drugs in the apartment, constituted a valid protective sweep for the officers' safety incident to the arrest. The State also argues that the trial court erred in deciding the motion to suppress before all evidence had been presented, and that the record is insufficient to determine the validity of the search of the apartment based on Aikens's consent to search.

We conclude that the task force had the requisite statutory authority to execute the warrant for Smith's arrest in New Jersey. We also conclude that the trial court erred in deciding the validity of the protective sweep of the apartment after Smith's arrest and suppressing the evidence discovered by the Phillipsburg police based on Aikens's consent to search, without allowing the State to present all evidence relevant to these issues.

## II

Initially, we note that the facts relating to the task force's authority to execute the warrant for Smith's arrest in New Jersey are undisputed and that neither the State nor defendants contend that any of the additional evidence they would have presented if the trial court had completed the suppression hearing would be relevant to this issue. Consequently, even though the trial court erred in deciding the motion to suppress before hearing all of the evidence, the issue of the task force's authority to arrest Smith is ripe for decision.

▆▆▆ The Fugitive Felon Act makes it a federal felony to travel between states to avoid prosecution for a state felony. This statute provides in pertinent part:

> Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which he flees, for a crime, or an attempt to commit a crime, punishable by death or which is a felony under the laws of the place from which the fugitive flees ... shall be fined under this title or imprisoned not more than five years, or both.
>
> [18 *U.S.C.A.* § 1073.]

The purpose of the Fugitive Felon Act is to empower "[f]ederal officers to follow a criminal from one state to any other state or states." *United States v. Brandenburg,* 144 *F.*2d 656, 659 (3d Cir.1944) (quoting H.R.Rep. No. 1458 (1934) (statement of Rep. Sumners)). The Act has been described as "a jurisdictional device to permit federal officers to search for state felons." *Beach v. Smith,* 535 *F.Supp.* 560, 562 (S.D.Cal.1982).

▆▆▆ Under Pennsylvania law, escape from "official detention" is a felony even if the crime upon which that detention was based is a misdemeanor. 18 *Pa.C.S.A.* § 5121(d); *Commonwealth v. Kowalski,* 854 *A.*2d 545, 547–48 (Pa.Super.2004). Consequently, Smith became liable for prosecution under the Fugitive Felon Act by traveling to New Jersey after her escape from a Pennsylvania penal institution.

▆▆▆ Although the only warrants issued for Smith's arrest were Pennsylvania warrants, a United States marshal is statutorily authorized to make a warrantless arrest of any federal felon:

> United States marshals and their deputies may ... make arrests without warrant ... for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony.
>
> [18 *U.S.C.A.* § 3053.]

This authority is also set forth in 28 *U.S.C.A.* § 566(d). Therefore, the members of the United States Marshals Service task force were authorized by 18 *U.S.C.A.* § 3053 and 28 *U.S.C.A.* § 566(d) to arrest Smith in New Jersey without a federal warrant because they had reasonable grounds to believe that she had

violated the Fugitive Felon Act by fleeing to New Jersey after her escape from a Pennsylvania penal institution.[1]

The validity of Smith's arrest is not affected by the fact that she was never charged under the Fugitive Felon Act because a United States Marshal has the authority to arrest a fugitive who is violating the Act even if the fugitive will be charged only under state law. *See United States v. McCarthy,* 249 *F.Supp.* 199, 203 (E.D.N.Y.1966); *see also Fed.R.Crim.P.* 5, advisory committee note (1995 Amendments) ("The purpose of the [Fugitive Felon Act] is fulfilled when the person is apprehended and turned over to state or local authorities."). Furthermore, the validity of the arrest was not affected by the fact that a majority of members of the FALCON III task force were Pennsylvania law enforcement officers who were deputized as Marshals solely for task force operations. The Presidential Threat Protection Act of 2000, Pub.L. No. 106–544, § 6, 114 Stat. 2718 (2000), directs the Attorney General to create Fugitive Apprehension Task Forces, which incorporate federal, state and local law enforcement authorities in designated regions, to be directed and coordinated by the United States Marshals Service, for the purpose of locating and apprehending fugitives. The deputizing of state or local law enforcement officers to perform the functions of a Deputy United States Marshal is authorized by 28 *C.F.R.* § 0.112(b) "whenever the law enforcement needs of the United States Marshals Service so require."

---

[1] We only hold that the task force members had statutory authority to arrest Smith in New Jersey. We do not address the constitutional issues presented by the fact that Smith's arrest occurred inside or at the threshold of a private residence. *Compare United States v. Watson,* 423 *U.S.* 411, 423–24, 96 *S.Ct.* 820, 828, 46 *L.Ed.*2d 598, 609 (1976) *with Steagald v. United States,* 451 *U.S.* 204, 213–14, 101 *S.Ct.* 1642, 1648, 68 *L.Ed.*2d 38, 46 (1981); *see also United States v. Oaxaca,* 233 *F.*3d 1154, 1157 (9th Cir.2000); *United States v. Berkowitz,* 927 *F.*2d 1376, 1387–88 (7th Cir.1991); *United States v. Cruz Jimenez,* 894 *F.*2d 1, 5–6 (1st Cir.1990); *State v. Cleveland,* 371 *N.J.Super.* 286, 299–301, 852 *A.*2d 1150 (App.Div.2004), *certif. denied,* 182 *N.J.* 148, 862 *A.*2d 57 (2004). Those issues should be addressed only after the suppression hearing is completed and a full record is developed.

■ Nor is the validity of the arrest affected by the task force's failure to give advance notice to the Phillipsburg Police Department of its plan to arrest Smith in Phillipsburg. Although the memorandum of understanding under which the task force was operating stated, "[i]f necessary, when an attempt is being made to arrest a state subject, a request for a marked Police vehicle and uniformed officer may be made to assist in the arrest[,]" there is no federal statute or administrative regulation that requires the United States Marshals Service to give advance notification to local police before making an arrest. Consequently, even though it would have been better police practice for the task force members to have advised the Phillipsburg Police Department of their intent to arrest Smith in Phillipsburg, their failure to do so did not invalidate the arrest.

### III

■ "Where there is a dispute as to material facts on a motion to suppress ... the trial court should not restrict the State or defendant in the presentation of all relevant evidence so that, if appellate review is had, the record will be complete, and a final adjudication can be made." *State v. Hope,* 85 *N.J.Super.* 551, 555, 205 *A.*2d 457 (App.Div.1964); *see also State v. Wilson,* 178 *N.J.* 7, 14, 833 *A.*2d 1087 (2003); *State v. Gaudiosi,* 97 *N.J.Super.* 565, 568–69, 235 *A.*2d 680 (App.Div.1967). In this case, the trial court granted defendants' motion to suppress without hearing all of the evidence because the court concluded that the United States Marshals Service task force did not have jurisdiction to arrest Smith in New Jersey and that the invalidity of Smith's arrest required suppression of all evidence discovered in the search of the apartment at 20 North Main Street in Phillipsburg.

■ Even if the trial court's conclusion regarding Smith's arrest were correct, the court should not have precipitously aborted the hearing without allowing the State to complete its case. It is not self-evident that the invalidity of that arrest would require the suppression of all the evidence discovered in the apartment.

Some of that evidence was obtained by the Phillipsburg police pursuant to a written consent to search that Aikens executed after the task force had left the apartment. Moreover, although Smith's arrest and the task force's discovery of drugs in the apartment were the immediate occasion for Phillipsburg police officers coming to the scene, those officers already had evidence, based on an undercover purchase of drugs five days earlier, that there were drugs in the apartment. While we express no opinion regarding the significance of this circumstance, the complex "fruit of the poisonous tree" issue presented by the Phillipsburg Police Department's search of the apartment pursuant to Aikens's consent to search, *see State v. Domicz*, 377 *N.J.Super.* 515, 552–55, 873 *A.2d* 630 (App.Div.2005), *rev'd on unrelated grounds*, 188 *N.J.* 285, 907 *A.2d* 395 (2006), underscores the point that the trial court should not have undertaken to decide the motion to suppress without hearing all the evidence, particularly the testimony of Lieutenant Mirenda, who obtained the consent.[2]

In addition, it is unclear whether the State presented all of its evidence relevant to the validity of Smith's arrest and the task force's protective sweep of the apartment after her arrest. Therefore, the State should be afforded the opportunity to present any additional evidence it may have relevant to these issues. Defendants also should be afforded the opportunity to present evidence regarding the arrest and protective sweep. The trial court should not have reached any conclusions regarding these issues before the parties had presented all their evidence.

Accordingly, the order granting defendants' motion to suppress is reversed, and the case is remanded to the trial court for further proceedings in conformity with this opinion.

---

2 We also note that even if Smith's arrest and the subsequent searches of the apartment are found to be invalid, the evidence obtained in those searches may be admissible in the trial of the escape, hindering apprehension and criminal mischief charges against Brown. *See State v. Battle*, 256 *N.J.Super.* 268, 272–78, 606 *A.2d* 1119 (App.Div.), *certif. denied*, 130 *N.J.* 393, 614 *A.2d* 616 (1992); *see also State v. Williams*, 192 *N.J.* 1, 11–18, 926 *A.2d* 340 (2007).